[Crim. No. 2455. Second-Appellate District, Division One.—February 27, 1934.]

THE PEOPLE, Respondent, v. ALEX MOORE, Appellant.

Peter J. Youngdahl for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

YORK, J.—Appellant was charged by an information filed by the district attorney with the crime of receiving stolen property and with four prior convictions.

One L. G. Dodge, manufacturer's representative of an eastern firm of clock manufacturers, had in his possession in June, 1933, some 400 automobile clocks. About June 19th, he discovered that approximately 100 of the clocks were missing, and on July 15th he recognized nine of the clocks in an automobile dealers' establishment, the latter having taken the clocks in an automobile trade with one Kreutzer. Kreutzer, during the month of June, 1933, was living in the same apartment house in which defendant and wife had their home. Kreutzer testified that on June 25th defendant came to his apartment with a clock and told him that he had two dozen clocks which he had bought from a friend for $25; that after some discussion it was arranged that the witness Kreutzer should sell the clocks on the basis of netting defendant $2 for the eight-day clocks and $1 for the one-day clocks. The witness disposed of nine clocks by trading them to the Huntington Park Auto Company for an automobile. Later defendant gave the witness seven more clocks to sell, but shortly thereafter took them back, giving as his reason for so doing that they were not being sold fast enough. Defendant claimed he had bought the clocks from a man named Richard C. Turner and that Turner had told him he got them out of a salvage sale. A number of the clocks were found in defendant's apartment at the time of his arrest.

Appellant seeks a reversal of the judgment on the following grounds:

1. The court admitted, over defendant's objections, evidence of a former conviction.

2. (a) The court denied defendant's motion to dismiss at the conclusion of the People's case; the motion being made on the ground that the State had failed to make out a *prima facie* case, there being no evidence of any knowledge on the part of the defendant that the clocks in question were stolen.

(b) The court denied defendant's motion for a directed verdict made after defendant had rested, and made on the ground that the evidence was not sufficient in either character, quantity or quality to sustain a judgment of guilty.

(c) The court denied defendant's motion for a new trial.

3. The court refused certain instructions material to defendant's rights.

■ In interrogating the officer who made the arrest and who testified that the defendant told him he got the clocks from Richard C. Turner, the district attorney asked the following questions: "Q. Did he say how long he had known Turner? A. Yes, he said he had known him for a long time. Q. Did he say whether or not he was in any business other than the bootlegging business? A. No, he didn't. So then I asked the defendant, Mr. Moore, how many clocks he had gotten from Richard C. Turner. He told me he got about two dozen. I asked him if it was not a fact that this Richard C. Turner went to Dodge's place at 365 North Sycamore and burglarized the place and taken the clocks from there, and he said no, he didn't know anything about them being stolen, Turner told him he had got them out of a rubbish pile. Q. Did he say where he met Turner? A. Yes. Mr. Youngdahl: Objected to as incompetent, irrelevant and immaterial. The Court: Overruled. A. I asked Mr. Moore where he met this Richard C. Turner, and he told me he had done time with him in Joliet. Mr. Youngdahl: I move that that be stricken. The witness: I think he said he went there on the theft of an automobile. Mr. Youngdahl: I move that it be stricken from the record and the jury admonished to disregard it. The Court: Motion denied."

The appellant contends that evidence of his imprisonment at Joliet was not introduced for impeachment or to prove any element of the offense with which he was charged, but that the only purpose was to allow the past for which he had paid in full "to rise up and smite him" (as the district attorney stated in his argument to the jury), and to permit the jury to infer that, because he had previously been convicted of a crime it was more likely that he also was guilty of this offense. He further contends that the admission of such evidence was so highly prejudicial to his rights as to entitle him to a reversal of the judgment.

It is elementary that knowledge that the goods were stolen is one of the essential facts to be proved in a prosecution for receiving stolen goods, and this knowledge may be inferred from the surrounding conditions and circumstances, as, for instance, inadequacy of the price asked by defendant upon a sale of the goods, and also that they were acquired from a person of questionable character. Apparently, the ques-

tions complained of were propounded to the witness in order to bring before the jury the fact that Turner was an exconvict and that appellant, at the time he purchased the clocks from Turner, knew this, rather than to show that appellant himself previously had been convicted of crime.

We have examined the evidence introduced at the trial and believe that it is sufficient to warrant the conviction, and that the court properly denied defendant's motions to dismiss and for a directed verdict.

We also believe the jury was adequately instructed, and that no error that would justify a reversal was committed by the trial court in its refusal to give certain of the instructions requested by appellant, which refusal has been cited by appellant as one of his grounds for a reversal of the judgment.

The judgment and order are affirmed.

Conrey, P. J., and Houser, J., concurred.