[Crim. No. 2889.   Second Appellate District, Division One.—January 12, 1937.]

THE PEOPLE, Respondent, v. IRVING STOLLMACK, Appellant.

A. Brigham Rose for Appellant.

U. S. Webb, Attorney-General, Paul D. McCormick, Deputy Attorney-General, Buron Fitts, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

DESMOND, J., *pro tem.*—This is an appeal by defendant from judgments of conviction upon two counts charging him with receiving stolen property.

It is contended that the verdicts reached by the jury are contrary to the law and the evidence; that the court erred in various rulings upon the admissibility of evidence, and in refusing to give certain instructions. It is also charged that the district attorney was guilty of misconduct in his closing argument to the jury.

The appeal is taken also from the order of the court denying the motion of defendant for a new trial.

It appeared from the evidence that defendant had been engaged in business for ten or twelve years at a point on Ventura Boulevard known as Triunfo, where he maintained a filling station, general store and postoffice. In the latter part of 1935 he discontinued business at Triunfo and established a drugstore at 701 South Central Avenue in the city of Los Angeles. At or about the time defendant moved to Los Angeles a man named Roy Witzel was appointed assistant postmaster at Triunfo, under the name of Bayless. The defendant knew him under both names at the time of the appointment, which was made upon his recommendation. From evidence produced before the jury it appeared that Witzel, working with several other men, including Shelby Murdock and Fred Rokes, also known as Jones, was engaged in an extensive business of burglarizing stores, and, with his confederates, disposing of the proceeds of these burglaries by sale either to the public generally or to individuals. A convenient place for the disposal of stolen property was Triunfo, and the evidence indicated that shortly

after defendant closed his store at that place these confederates in crime stocked the shelves with a variety of stolen goods taken from a number of establishments in the cities of Los Angeles and Long Beach. The goods consisted of groceries, meats, cigars, cigarettes and liquors, as well as many other items.

Rokes testified that on the night before Thanksgiving, 1935, he burglarized the store of Davis-LeGrand Company at Long Beach, accompanied by one Peterson and Witzel; that the goods taken in that burglary were transported to Triunfo and that later he delivered eighteen cases of the plunder to the store maintained by defendant at 701 South Central Avenue. He testified also that on the Friday before Christmas he entered the New Central Market in Los Angeles and stole cigarettes and cigars there; that on the following day he delivered a quantity of the cigarettes to defendant at 701 South Central Avenue, receiving $100 in currency at that time on an agreed price of $328 for the lot; that on the Monday before Christmas defendant paid him $60 in currency, and on the Thursday after Christmas a check for $154 was signed by defendant, sent to the bank and the cash realized therefrom given to Rokes. This witness testified that during the week prior to Christmas he had told defendant that he ''had made arrangements with one of the boys working in this market to go there this night and get these cigarettes, and asked him if he wanted to buy them. . . . I told him we were going to get them the following Friday night; I asked him did he want to buy them, and he said he did. When I got the cigarettes I brought them to him.'' All the goods were sold to defendant for a price considerably less than list price.

The two sales referred to, one at Thanksgiving time and the other in the Christmas season, were the transactions set out in the two counts upon which conviction was had and both transactions took place after the defendant had moved from Triunfo to Los Angeles. The witness Fred Rokes, however, was asked by the district attorney as to whether he had had any other transactions with defendant, and, notwithstanding vigorous protests by defendant's counsel, was permitted to give the details of three other transactions occurring between August and November of 1935. On the first of these occasions the witness testified

that, accompanied by Murdock, he unloaded from his car into the front room of defendant's house, whiskey and an adding machine which had been obtained from an establishment known as "Bud and Jim's" on Wilshire Boulevard, Los Angeles; that in that burglary he had been assisted by his brother, Gerald Rokes, and Shelby Murdock; that defendant paid Murdock $100 for the goods in the presence of the witness, Fred Rokes. J. E. Otto, one of the proprietors of "Bud and Jim's", identified the adding machine, which was introduced as an exhibit, as having been stolen from his place about August 28, 1935, and testified that he had paid $65 for it new, in March of that year. Murdock, in testifying as to the delivery of these goods to defendant, stated that the price paid by defendant, a total of $100, was made up of two items: $15 for the adding machine and $85 for the liquor. It may be noted in passing that these contraband goods were transported to defendant's place of business at Triunfo, according to the testimony of the People's witnesses, in a 1934 Ford tudor sedan and not in a delivery truck, and at this point we may say that it appeared in regard to various transactions that deliveries were made at Triunfo generally by means of automobiles and at or before dawn.

██ Fred Rokes testified that about three weeks after the transaction last described he and his brother, Murdock and a man named Peterson, burglarized the Tropico Market in Long Beach and delivered the goods to defendant at Triunfo, and that he saw defendant at that time pay Murdock for the goods the price demanded, approximately $100. As to this delivery, it appeared that the name, Tropico Market, appeared on some of the bottles contained in the shipment, and according to the witness, defendant asked where the Tropico Market was, and then noted the name and address of the establishment printed upon the label. Rokes further testified that on another occasion late in October or early in November, he and his brother, accompanied by Witzel, Peterson and Murdock, delivered three automobile loads of merchandise to defendant at Triunfo, the proceeds of a burglary committed at the Brooks Market in Los Angeles. While defendant was not charged in the indictment upon which he was convicted with any of the last three mentioned transactions, we hold that, as bearing upon the motive or

intent actuating the defendant at the time of the offenses charged against him, the court committed no error in permitting testimony concerning them to go to the jury. As stated in *People* v. *Cook,* 148 Cal. 334, at page 341 [83 Pac. 43], "such distinct offense may be proved—as, for instance, to show a motive on the part of defendant to commit the crime charged, or the intent with which an equivocal act has been done, such as passing a counterfeit bill, or receiving stolen goods". (See, also, cases cited in 7 New Cal. Digest, p. 70.)

■ Defendant specifies as error the admission in evidence of an automatic revolver, concerning which the deputy district attorney who tried the case made inquiry of defendant as follows: Q. "Showing you this gun, that has the numbers filed off of it, I will ask you, have you ever seen that gun before?" Defendant, over strenuous objection by his counsel, finally answered the question by saying that Fred Rokes "wanted to borrow ten dollars; he said, 'I will leave this gun for the ten dollars.'" But Officer Gillan testified in rebuttal that on December .31, 1935, in the presence of defendant, he withdrew the gun from defendant's desk at 701 South Central Avenue and asked him if he owned it; that defendant stated that he did not. The officer then, according to his testimony, asked defendant how long that gun had been in that particular desk, and defendant "stated as near as he remembered about a week. I asked him where did it come from, and he stated it come from a man he knew as Mr. Bayless. I asked him how Mr. Bayless come to leave it there, and he said he didn't know, other than he had just asked to leave it there for about a week, and he expected him to call for it. . . . I asked him what reason Mr. Bayless would have for leaving the gun, and he stated he was assistant postmaster at a little store in Triunfo, whom he knew, and he presumed he had that gun for the protection of his postoffice." The testimony of this officer was contradicted by defendant on surrebuttal. As to the $10 which defendant said he delivered to Rokes, the testimony of defendant was as follows: "He came in and I was busy, and he said, 'Will you let me have $10?' I reached in my pocket and gave him $10. Q. What day was that? A. I believe the 24th, or that part of December. Q. Right after you paid him one hundred and some odd dollars for

cigarettes? A. I don't remember whether it was right after, before, or it was around that part of the time he had collected the money, yes.''

Defendant also specifies as error the admission in testimony of certain letters written by defendant to the probation department of Los Angeles County concerning Witzel. The last of these letters was written on March 12, 1936, after defendant had been arrested and charged with the offenses herein involved. In this letter he said: ''I will be very happy to furnish you with any information I will be able to obtain with regard to this matter.'' It does not appear what matter the probation department inquired about nor is there any statement in the letter of March 12th as to the character of Roy Witzel, but in an effort to show that defendant, at a time previous to the inquiry of March 12th, knew something of the reprehensible character of Witzel, the deputy district attorney then introduced two letters signed by defendant on May 7, 1934, and October 1, 1934, respectively. The letter of May 7th was addressed to Carl May, adult probation officer, Los Angeles, and stated that defendant would not hesitate to recommend Roy Witzel as having always conducted himself in a upright and trustworthy manner. The letter of October 1st was addressed to K. J. Scudder, probation officer, Los Angeles, in which defendant stated he had known Roy Witzel for several years and ''in our business and social relations I have always found him honest, sincere and trustworthy''. As to the letters of 1934, defendant explained to the jury that he had no clear recollection of having discussed with Mrs. Witzel, at whose solicitation he wrote the letters, the nature of the trouble Witzel was in; that he thought it may have been for drunken driving or something of that sort. Defendant also testified that at the time he was arrested late in December, 1935, or early in January, 1936, he learned either from police officers or the newspapers that Rokes, Murdock and Witzel were wanted in connection with the robbery of the Grand Hotel, stating that he heard from Captain Curtis of the police department that ''these boys have been up to a lot of things''.

Defendant contends that since the gun was shown him by the police officer for the first time on December 31, 1935, which was at a date subsequent to the commission of either of the offenses charged in the indictment, that any inquiry

concerning it before the jury was barred. In reply to this contention it may be said that rarely, if ever, would it be possible to secure a conviction upon the charge of receiving stolen property if the People were required to prove that the defendant had actual personal knowledge that the property in question was stolen. In *People* v. *Clausen*, 120 Cal. 381 [52 Pac. 658], where Wharton's Criminal Law was quoted approvingly by our Supreme Court, it is stated: ''The proof in any case is to be inferential, and among the inferences prominent are inadequacy of price, irresponsibility of vendor or depositor.''

In *People* v. *Moore*, 137 Cal. App. 130 [30 Pac. (2d) 79], the following appears: ''It is elementary that knowledge that the goods were stolen is one of the essential facts to be proved in a prosecution for receiving stolen goods, and this knowledge may be inferred from the surrounding conditions and circumstances, as, for instance, inadequacy of the price asked by defendant upon a sale of the goods, and also that they were acquired from a person of questionable character.'' As we have noted, there was evidence from which the jury might have found that the defendant in this case had been acquainted with Rokes for some months prior to the offenses charged against him; that he had seen him in company with Witzel concerning whom inquiries from the probation office had been made of the defendant in 1934, and on the occasions when he had seen Rokes with Witzel, they had been engaged in delivering goods to him in a manner and under circumstances that would naturally create a suspicion that they had been stolen. As bearing upon the character of Rokes as it was known to defendant, as well as bearing upon the conduct of defendant at the time the police officers were engaged in investigating the delivery of goods to his store, it seems to us that the testimony in regard to the gun was properly admitted under the version of its discovery as given by defendant himself as well as on the testimony of the police officer who quoted defendant as saying that the gun had been left by Witzel and not by Rokes. We feel also that the testimony relating to inquiries made by the probation office in regard to Witzel and also the letters written by defendant to the probation department concerning Witzel had a direct bearing upon the knowledge of defendant as to the character of the person

he was dealing with. If, however, error occurred in admitting testimony as to these two matters: the gun and the correspondence with the probation office, this in itself is not a sufficient reason for reversal. As in the case of *People* v. *DeVaughn,* 136 Cal. App. 746, 748, 753 [29 Pac. (2d) 914]: "The evidence so strongly proves defendant's knowledge of the fact that he was buying stolen property, that a finding against him on that issue was the only reasonable finding that could have been made."

█ We have noted that defendant complains upon this appeal that the district attorney was guilty of misconduct in his closing argument to the jury. In reading the transcript we observe that the record is replete with charges of misconduct made by defendant's counsel during the conduct of the trial and there is no question that the case was hotly contested and that counsel for both sides indulged in oral passages at arms. However, we are not satisfied that the deputy district attorney who prosecuted this case was guilty in any particular of misconduct and at this point will quote, as applicable to the present situation, *People* v. *Sieber,* 201 Cal. 341, 355 [257 Pac. 64]: "We are unable to say that the questions charged to have been asked by the deputy district attorney in bad faith were, in fact, improperly propounded. Neither are we convinced that during his argument to the jury that officer purposely referred to matters not in the record, or intentionally made misstatements of law, for the purpose of misleading the jury. The right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom. The adverse party cannot complain if the reasoning be faulty and the deductions illogical, as such matters are ultimately for the consideration of the jury. (8 Cal. Jur., p. 263.) From the record of the portions of the argument of the deputy district attorney to the jury, to which objections are now made, it appears that there were mutual recriminations between counsel for the state and for the defendant respecting their official and professional methods."

█ Considering the further contention, here made a ground of appeal, that the court committed error in refusing to give certain instructions, we have examined all the

given and refused instructions and find that those requested by defendant and refused by the court were properly refused either because they were sufficiently covered by other instructions which the court gave or because they had no application to the facts produced in evidence at this trial.

In our opinion the verdicts reached by the jury are amply sustained by the evidence and no error arose in connection with the trial which would justify a reversal.

The judgments are affirmed; so, also, is the order of the court denying the motion of defendant for a new trial.

York, J., concurred.

Houser, P. J., concurred in the judgment.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 25, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 11, 1937.