[Crim. No. 1790.    Third Dist.    Mar. 13, 1942.]

THE  PEOPLE,  Respondent,  v.  GEORGE  TRACY, Appellant.

Gilbert Moody for Appellant.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

THOMPSON, Acting P. J.—The defendant was charged and convicted, under section 476a of the Penal Code, with making, uttering and passing to Alex Kamarenos his check on the Merced Branch of the Bank of America, for the sum of $15, with intent to defraud said payee of that sum of money. The check was dated September 4, 1941. A motion for new trial was denied. On application for probation the judgment was suspended and the defendant was admitted to probation on condition that he serve a term of six months in the Stanislaus County Road Camp. From the order denying the motion for new trial this appeal was perfected.

The defendant resides at Turlock. He was engaged in buying and selling fruit. Alex Kamarenos and Sam Sagres were partners engaged in raising fruit on a farm near Modesto. On August 6, 1941, Mr. Sagres sold the defendant thirty boxes of tomatoes, for which he paid cash. On or about Thursday, September 4th, the defendant again called at the Modesto farm, and purchased from Alex Kamarenos twenty boxes of tomatoes, for which he paid $15 in the form of a check drawn on the Merced Branch of the Bank of America. The check was written by the defendant in the presence of Kamarenos on the bank form in the handwriting of the defendant. The blank checks were printed on a form which read, ''Modesto Branch, Bank of America.'' The word ''Modesto'' was scratched out, and the name ''Merced'' was written over that word. That transaction took place at the farm near Modesto early in the morning on or about September 4, 1941. Mr. Kamarenos said in that regard: ''He (the defendant) came early in the morning between 6 and 7, maybe 8.'' His partner, Mr. Sagres, was not there on that occasion. He further testified through an interpreter regarding the defendant's writing of the check:

''Q. Did he ask you who to make the check out to? A. Mr. Kamarenos said to make the check out to Sagres but apparently Mr. Tracy didn't wish to, so he made it out to Mr. Kamarenos' name. Q. Did he ask you how to spell your name? A. Yes, he did. Q. Did he write the check out in front of you? A. Right in front of him (Mr. Kamarenos) yes, sir. Q. Does this appear to be the check (showing)? A. Yes, this is the check. Q. How much were those tomatoes? A. They were 75 cents a box, or $15 for the whole lot.''

The check was presented for payment to the Merced Branch

of the Bank of America on September 11th. Payment was refused on the ground that the defendant had no funds in that bank. The assistant cashier testified that the defendant never had an account in that bank.

To show the defendant's intention to defraud Kamarenos, another small check for $3, which was drawn in favor of H. Oletta, on September 2, 1941, on that same bank, was received in evidence. That check was also refused payment on the same ground. It was in the same handwriting.

The information was then filed against the defendant, charging him with making, uttering and delivering the $15 check to Alex Kamarenos, "on or about" September 4, 1941, with intent to defraud him of that sum of money. The defendant was found guilty as charged.

It is contended the verdict and judgment are not supported by the evidence, and that the order denying defendant's motion for a new trial was therefore erroneously denied. The chief assertion, in that regard, is that the defendant established a complete alibi by proving he was in and about Sonoma from September 2d to the 5th day of that month, and that he therefore could not have uttered, published or passed the check in question at Merced "on or about" September 4th. A reversal of the order denying a new trial is sought on the ground that the court erred in refusing to give to the jury two instructions to the effect that unless the prosecution proved that the check was written and passed on the 2d, 3d, 4th or 5th day of September, the defendant must be acquitted.

There appears to be no reasonable doubt of the identity of the defendant as the man who uttered and passed the $15 check. He was engaged in the business of buying and selling fruit. He had purchased thirty boxes of tomatoes from Mr. Kamarenos' partner at that same farm about two weeks previous to this transaction. Kamarenos testified that the defendant bought the tomatoes from him about that date, and wrote the check in his presence. After the arrest of the defendant, Kamarenos visited the jail and promptly identified him among several other prisoners. Mr. Sherwood Morrill, a handwriting expert from the State Division of Criminal Identification, testified from an examination of the two fictitious checks, as compared with several documents which were acknowledged to have been written by the defendant, that the

checks were written by him. He said in that regard: ''In my opinion they were written by the same person.'' It is true that the defendant denied writing or passing the check in question. He denied that he purchased tomatoes from Mr. Kamarenos on September 4th, or at any other time. In fact, he denied ever having seen him before the time when he met him in jail after his arrest. But those denials are contradicted by the evidence which was adduced at the trial. The weight of evidence and the credibility of the witnesses are questions for the determination of the jury. Those issues were decided against the defendant. We have no power to disturb their conclusions in that regard.

The time of the commission of the offense was sufficiently established as on or about September 4, 1941, which is the date the fictitious check bears. A portion of the testimony of Mr. Kamarenos, which was taken at the preliminary examination, was read in evidence at the trial, from which it appears the tomatoes were sold to the defendant ''on or about the date this check was dated, September 4th.'' He was asked that question and replied ''yes.'' He was further asked, ''How long after you got the check did you give it to Mr. Honeycutt? . . . A. It was about a week or over, or maybe a day less.'' Mr. Honeycutt accepted the check as part payment for rent which was due from the partners on the ranch where the tomatoes were produced. Honeycutt testified he received the check September 10th. It was actually presented to the bank for payment on September 11th. That evidence corroborates the first statement of Mr. Kamarenos that he received the check from the defendant ''on or about'' September 4th. He was uncertain regarding the exact date, but the evidence is entirely satisfactory that it was written and delivered to him by the defendant within one or two days of the date which it bears. That evidence is sufficient under the circumstances of this case to conform to the requirement of the law in that regard.

The general rule, with respect to proof of the time when an offense is committed, is that there is no fatal variance from the allegation that it was committed on a particular date, to show that it was actually committed on or about or near that date, unless the variance results in misleading the defendant so as to prevent him from making his defense to the charge or to deprive him of the benefit of a plea of former jeopardy in the event of another trial for the same offense. (*People* v.

*Becker*, 140 Cal. App. 162 [35 Pac. (2d) 196]; *People* v. *Ralls*, 21 Cal. App. (2d) 674 [70 Pac. (2d) 265]; *People* v. *Harrington*, 92 Cal. App. 245, 254 [267 Pac. 942]; 23 C. J. S. 746, sec. 1196a.) In the text last cited it is said in that regard:

"Ordinarily, however, where time is not an essential and material element of the offense, an instruction as to the time should limit it to a date anterior to the date of the filing of the indictment or information, and within the limits included in the statute of limitations applicable to the offense charged, and should fix the time covered by the statute. Subject to this rule, it is proper to instruct that it is sufficient to prove that the crime was committed *at or about the time alleged,* or within a given period before the filing of the indictment or information."

In the present case the information charged the defendant with uttering and passing the check in question "on or about September 4, 1941." The evidence is convincing that he actually passed the check on the date named, or within a day or two thereof. If there is a doubt regarding the exact date, the defendant was not misled thereby or deprived of the benefit of his effort to prove an alibi. He introduced evidence tending to show that he was in or near Sonoma, at a distance of about 160 miles from Merced, on September 2d, 3d and 4th. He claimed he did not return to Merced County until September 5th. He was given notice at Sonoma by a traffic officer, September 4th, at 7:30 o'clock p. m., requesting him to have a defective tail-light corrected. It is not suggested how additional evidence upon the subject of his defense of an alibi could have benefited him even if the check were actually delivered within a day or two either before or after the 4th of September. The jury evidently considered all of the evidence which could have been adduced on the subject of an alibi. It was exclusively their province to determine the weight of that evidence and the credibility of the witnesses.

Defendant's proof of the alibi is not conclusive. The fact that he drew the check and delivered it on or about September 4th is very convincingly shown by the evidence. Assuming that he was at Sonoma on the 2d and 3d of September does not preclude the possibility of his having returned to his home on the night of the 3d. Mr. Kamarenos testified that he purchased the tomatoes very early in the morning, "between 6 and 7, maybe 8" o'clock. Mrs. Ponton of Sonoma

testified that she thought the defendant called at their home on September 4th "before noon." She fixed no definite time. When she was asked, "You recall what time of day he first came there on Thursday?" she replied, "Well, it was before noon." It thus appears that the defendant might have accepted delivery of the tomatoes at Merced at 6 or 7 o'clock that morning and he would have been able to reach Sonoma before noon. Or it may be true that the defendant actually delivered his check on the morning of September 6th, and that he inadvertently or purposely antedated it as of September 4th. Those were questions for the determination of the jury. In either event there was not a fatal variance from the allegations of the information.

■ It was not error for the court to refuse to direct the prosecution to elect to designate the exact date upon which it relied in proof of the commission of the offense.

■■ The court did not err in refusing to give to the jury defendant's proposed instructions numbers 9 and 10, which were refused on the ground that they were covered by instruction number 12, which was given to the jury. The rejected instructions directed the jury to acquit the defendant unless they found that the offense was committed "on September 2d, or 3d, or 4th, or 5th of the year 1941," or unless they found the offense was committed "on September 4th, 1941, or in close proximity thereto." The last-mentioned instruction was proper, but it was fully covered by instruction number 12 which was given to the jury in the following language:

"It is not necessary for the prosecution to prove the commission of the offense on September 4th, 1941, but proof of its commission by the defendant at any time on or about that date and within three years of the filing of the information is sufficient."

Under the circumstances of this case the foregoing instruction was a correct declaration of the law. Under the authorities previously cited, instruction number 10 was properly rejected. The other rejected instruction was fully covered by the last-mentioned one.

The order denying the motion for new trial is affirmed.

Steel, J. pro tem., and Tuttle, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 9, 1942.