[Crim. No. 4889.   Second Dist., Div. One.   Feb. 26, 1953.]

THE PEOPLE, Respondent, v. GERALD GLEN BOYDEN, Appellant.

Gerald Glen Boyden, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, appellant and one Louis William Parks were charged in Count I with the crime of burglary, and in Count II with the offense of receiving stolen property. Each was charged with having previously been convicted of a felony and with having served a term of imprisonment therefor.

Appellant pleaded not guilty as charged in the information, and admitted the prior conviction. He refused the court's offer to appoint counsel to represent him, and notwithstanding the repeated urging of the trial judge that he accept counsel, he steadfastly insisted that he would represent himself.

Trial by jury was duly waived and following trial before the court, appellant was found not guilty of burglary as charged in Count I and guilty of the offense of receiving stolen property as alleged in Count II. His codefendant Parks was acquitted on both counts. Judgment was accordingly pronounced and from the judgment of conviction this appeal is prosecuted.

Epitomizing the factual background surrounding this prosecution, the record reflects that at 5 p. m. on February 26, 1952, the senior cashier of the Department of Employment of the State of California, at the Huntington Park office in Los Angeles County, locked up the two safes which were inside a metal cash cage, focused a light on each, turned it on, and locked the door of the cage. Inside the cage were two adding machines. Between 5 and 5:30 p. m. that night, the windows and doors of the office were checked to see that they were locked. The janitor, who was the last person to leave the office, noticed that the cage was locked and the lights focused on them when he left at 7:15.

On the morning of February 27, 1952, the employment security officer for the Employment Department entered the office between 7 and 7:10 a. m. He saw that the back door was open and a fire extinguisher was holding it. The screen door was unlocked and there were several indentations on it. The door of the cage had been forced open, the lock was broken, the lights which had been focused on the cages were off, and one of the safes had been moved several inches off its base.

The acting manager checked the equipment which was left in the office against an inventory list which had been made up the previous July, and determined that two adding

machines and eight typewriters were missing. The types and numbers of the missing typewriters were of record. Neither the senior cashier nor the acting manager had given anyone permission to enter the office or take anything therefrom.

On February 29, 1952, at about 1:45 p. m., appellant entered the Parker Typewriter Company in Pasadena. He asked if they bought used typewriters, and Mr. Parker asked him what kind of a machine he had. The appellant said it was an Underwood, and was about six months old. He said that he had it in his car, and Mr. Parker told him to bring it in. The appellant brought in a typewriter, an Underwood, No. 6571790. (This was one of the stolen typewriters.) Mr. Parker offered the appellant $65 for the machine, which he accepted. While Mr. Parker was writing up the bill of sale, he asked the appellant if he had a bill of sale. The appellant said that he had not, as the machine had been given to his wife as a Christmas present. He later said it was a birthday present. Mr. Parker telephoned the Pasadena Police Department to check the serial number, and at that time the police said they had no record of it, but that they would telephone to Los Angeles and call Mr. Parker back. Ten minutes later the police called and said that the typewriter had been stolen, and that two officers were on their way over. The appellant was still in the store when the police arrived, and Mr. Parker turned the typewriter over to them.

The appellant told Officer Bornhoft, one of the arresting officers, that he was from Watts; that a friend named Robertson had taken him to Pasadena in the appellant's old Ford; that Robertson had gone to visit a girl friend and would return for him in about 30 minutes. The appellant said that his wife had given him the typewriter the day before. The officers took the appellant to the police car, drove around the block, and parked on the Arroyo Parkway just south of Colorado Street. Their attention was attracted to a 1939 Oldsmobile which was parked nearby. It was registered to W. L. Boyden, and in the trunk compartment there was an adding machine (which was identified as having previously been in the Department of Employment office), and a Smith-Corona typewriter No. 1A2123484 (also identified as one of the stolen typewriters).

Later at the Pasadena Police Detective Bureau, Officer Bornhoft asked appellant where he obtained the Underwood typewriter, to which question appellant repeated that his

wife had given it to him the day before; that he was to sell it for her and give her the proceeds of such sale. The officer said, "You are not telling the truth." Appellant moved his head, indicating that he was not. The officer said, "You did not get this typewriter from your wife. You are telling a lie," to which appellant replied, "Yes. I have been in this sort of thing before, and the truth has never helped me." The officer then inquired of the appellant as to who owned the Oldsmobile and received the reply that it belonged to appellant's brother, but that the former did not know the vehicle was in Pasadena since he had not brought it there.

The arresting officer found a key on the appellant's person, and "No. 43" appeared on the tag thereof. The appellant said that it was for a room in the Reed Hotel, some place on 103d Street but that he did not live there, as he kept it to entertain girl friends; that his own room was No. 5.

On the evening of the same day, an investigator from the Department of Employment had a conversation with the appellant in the interrogation room of the Pasadena Police Department. The investigator, Mr. Cooper, asked appellant if he would give him a written statement, and the appellant refused. Mr. Cooper said, "This story that you told Officers Bornhoft and Rhue this afternoon was not true, was it, Gerry?" The appellant replied, "No, it wasn't. I never got any place telling the truth." Mr. Cooper said, "Well, this story that you got this typewriter from your wife is not true, is it?" The appellant replied, "No." Mr. Cooper asked where he got the typewriters and the adding machine, and the appellant said he got them at about 12 o'clock that day outside of the Samba Café on East Fifth Street, from a Joe Taylor. He said that Joe Taylor was a man he had "done time" with in the county jail at Los Angeles in 1947. He said that Taylor had backed up his Plymouth and transferred the machines into the trunk of the Oldsmobile. When Mr. Cooper asked the appellant if he knew whether the merchandise was "hot," appellant said, "I had an idea it was." He also said that he had nothing to do with the burglary.

On March 4th at the Huntington Park Police Department, Mr. Cooper showed the appellant seven photographs taken from the Los Angeles Police Department files, and asked him if he knew any of the persons. The appellant picked one photograph out and said that he "knew him"; that his name

was Joe Taylor. He denied that it was the Joe Taylor who gave him the machines, and said that it might have been the Joe Taylor that he "did time" with in 1947. He said that he did not know where the other machines were, but that if Mr. Cooper released him he thought that he could recover them with the assistance of Toledo Slim, a character from Fifth Street.

On March 4th, Officer Keator, of the Huntington Park Police Department, received a key, with a tag containing the number "43," from Captain Armstrong of the same department. He went to Room 43 of the Kaye Hotel at 5535 Central Avenue, and entered it. Inside he found a Remington typewriter and certain papers, among which was one having "State of California, Department of Employment" printed at the top.

On March 5th, Mr. Cooper had another conversation with appellant, about a typewriter which was said to have been removed. Mr. Cooper said, "Gerry, I suppose you know where we got this typewriter, don't you?" The appellant answered, "Yes, I think I do." Mr. Cooper said, "It was recovered in your room." The appellant said, "Yes, I know that." The appellant denied that Joe Taylor had taken the typewriter to the room, and said that he took it there himself.

In his brief, appellant denies the truth of statements attributed to him by police officers in their testimony, but he did not take the witness stand at his trial to deny or explain them. Article I, section 13 of the Constitution of California provides that in a criminal case, the failure of an accused to explain or deny by his testimony any evidence or facts in the case against him may be considered by the court or jury.

As his first ground of appeal, it is urged by the appellant that the court erred in allowing the investigating police officer to remain in the courtroom after all other witnesses were excluded at appellant's request. In refusing to exclude the investigating officer the court did not err. ■ The exclusion of witnesses on the part of the prosecution, on motion of the accused, is not a matter of absolute right in all cases, but rests very much in the discretion of the court, which discretion may be exercised in favor of the defendant's application or not, according to the circumstances of the case.

In the instant proceeding, the district attorney stated that he needed the services of the officer, and that there was no way in which he could properly present his case without the assistance of the officer. ■ It has long been the general

practice to permit some officer, active in the prosecution of the case, to remain for the purpose of advising the district attorney as to the facts, the interest and character of the witnesses, etc. Such a practice is proper and charges that such officer or witness has abused his privilege should be first brought to the knowledge of the trial court, that they may be corrected, if there be any ground for the charge. █ No charge of such abuse was made in the trial court and cannot be considered when made for the first time in the appellate tribunal. Furthermore, the officer in question had testified at the preliminary hearing and the testimony he gave was in the possession of appellant. In the absence of any showing to the trial court of prejudice that would probably arise from the presence in court of the investigating officer, it does not appear that there was any abuse of discretion in the order as made (*People* v. *Garnett*, 29 Cal. 622, 625; *People* v. *Ong Git*, 23 Cal.App. 148, 151 [137 P. 283]; *People* v. *Halbert*, 78 Cal.App. 598, 613 [248 P. 969]; *People* v. *Oliver*, 7 Cal.App. 601, 604, 605 [95 P. 172]).

It is next contended by appellant that he was deprived of the right to obtain counsel. In this regard appellant refers us to testimony given by one of the arresting officers, Wayne Bornhoft, of the Pasadena Police Department, as follows:

"Q. BY MR. BOYDEN: Did the Defendant Boyden ever ask you for permission to call an attorney? A. Yes, he did.

"Q. Did you give him permission to call an attorney? A. No, sir.

"Q. When was that? A. That was after my conversation with Defendant Boyden.

"Q. February 29th? A. Yes, sir."

Also, the testimony of Officer Arnett of the Huntington Park Police Department who was acting as jailer while appellant was confined there:

"Q. Were you instructed to keep the prisoners from making any outside contact? A. I was given instructions by the Captain of Detectives to keep the prisoners from making any outside calls until they were arraigned."

█ As we read the record in this case it substantiates appellant's contention that he was held incommunicado until he was arraigned, that during that period he was denied the privilege of communicating with counsel.

█ It is a fundamental right guaranteed by the law of the land that an accused confined in jail pending the trial of a charge against him, shall have an opportunity to obtain and

consult with counsel. In California, the right of an accused to obtain and consult with counsel is guaranteed by the Constitution, which, in section 13 of article I, expressly declares that "In criminal prosecutions in any court whatever, the party accused shall have the right to . . . appear and defend, in person and with counsel." That this clause of the Constitution, ". . . unquestionably was adopted to secure to the accused person all the benefits which may flow from the employment of counsel to conduct his defense. To afford him those benefits it is essential that he should be allowed to consult with his counsel, not only during the actual trial, but prior thereto, in order to prepare for his defense," was the holding in *In re Rider,* 50 Cal.App. 797, 799 [195 P. 965]. For the state to place a man on trial in its courts, charged with an offense involving his life, liberty or character and then place him in a position that he could not prepare to make his defense, would be nothing more than a cheap subterfuge of and a senseless mockery upon justice, and as well, a contemptuous disregard of the aforesaid constitutional provision. In California the Legislature has expressly provided that one confined in jail may be visited by his counsel and makes it a misdemeanor for an officer or jailer having custody of a prisoner, to unlawfully refuse or neglect to permit visitation of a prisoner by his attorney. (Pen. Code, § 825.)

Respondent urges that while in jail appellant told an investigator that he had an attorney and named him. Be that as it may, what service could such attorney render if the accused was denied the right of communicating with him?

Such flagrant misconduct and utter disregard of the rights of an accused by law enforcement officers deserves the severest condemnation, and if it appears that it materially affected the regularity of his trial and conviction, would require a reversal. However, in the case at bar, the misconduct of the police officers does not appear to have so affected the regularity of appellant's trial nor to have resulted in a miscarriage of justice. Such being the case, ". . . it is not the function of this court to reverse a judgment solely as a rebuke to 'law enforcement' officers for their own lawless acts, and improper administration of the law, independent of the trial which resulted in that judgment" *(People v. Stroble,* 36 Cal. 2d 615, 618 [226 P.2d 330]).

Appellant next urges that the fact that he was not taken before a magistrate within two days after his arrest requires a reversal of the judgment of conviction. Appellant

was arrested February 29 and held incommunicado until March 6 before he was brought before a magistrate. Of the illegality of such conduct there can be no doubt. Section 825 of the Penal Code provides, in part, as follows: "The defendant must in all cases be taken before the magistrate before unnecessary delay, *and, in any event,* within two days after his arrest, excluding Sundays and holidays. . . ." (Emphasis added.)

Officers of the law must realize that if they indulge in practices such as appear herein, they may, in the end, defeat rather than further, the ends of justice.

However, before we can declare a denial of that fundamental fairness essential to due process, we must find that the absence of that fairness materially affected the trial, and the conduct complained of must be of such quality as necessarily prevents a fair trial, such as a coerced confession which is used as a means of obtaining conviction. In the instant case no confession was obtained from the appellant during the time he was held in jail, nor were any tyrannical or oppressive means used to obtain from him any evidence that was presented at the trial. Appellant urges only that, the object of holding him in jail incommunicado, "was to permit the officers to manufacture a better case against him through his absence." Our research has not been rewarded with any case in which it was held that such securing of further evidence amounted to a denial of due process when it was presented in court. The test seems to be whether the violation of the constitutional and statutory rights of an accused immediately after his arrest appears to have materially affected the outcome of his trial. The situation presented here is not like that in the cases cited by appellant where judgments of conviction were reversed because of fundamental defects in the conduct of the trial due to the denial to an accused of fair, orderly trial procedure.

We find herein no showing of misconduct on the part of law enforcement officers which appears to have materially affected the result of the trial or made the trial itself unfair. A reversal of the judgment on the claimed ground of breach of due process is, therefore, not warranted.

Finally, appellant asserts that the evidence was insufficient to support the judgment of conviction. He urges that the prosecution failed to prove when the alleged stolen property was received by him, where the crime was committed, or that he knew the property had been stolen.

██ The People were not required to prove the date exactly as alleged. The burden was upon them of showing only that the offense was committed within the statutory period of three years. The evidence showed that the property in question was not stolen until the night of February 26-27, 1952. Manifestly, it must have been received by appellant subsequent to that time which was well within the statutory period. Furthermore, it was clearly established by appellant's own admissions that he received the property from one Joe Taylor at about noon on February 29, 1952. (*People* v. *James,* 59 Cal.App.2d 121 [138 P.2d 30] ; *People* v. *Tracy,* 50 Cal.App. 2d 460, 464, 465 [123 P.2d 138] ; Pen. Code, § 800.)

Appellant's contention that the property was received in San Clemente, Orange County, California, and that therefore, the Superior Court of Los Angeles County was without jurisdiction, is devoid of merit. ██ Venue, like any other fact in a criminal case, may also be established by circumstantial evidence, and it need not be proven beyond a reasonable doubt (*People* v. *Harkness,* 51 Cal.App.2d 133, 139 [124 P.2d 85] ). In the case at bar, the evidence showed that the typewriters were taken in the City of Huntington Park, Los Angeles County. ██ Some of them were found in appellant's possession in Pasadena, which the court will judicially notice is also in Los Angeles County (Code Civ. Proc., § 1875; *Warnock* v. *Kraft,* 30 Cal.App.2d 1, 3 [85 P.2d 505] ). ██ Since the theft occurred in Los Angeles County, and appellant was found with some of the stolen property in another city in that county trying to sell such property, and since it is not suggested in the evidence that appellant had been elsewhere than in Los Angeles County, the trial judge was warranted in reasonably concluding that appellant received the property in the last named county.

To substantiate his claim that there is no showing in the evidence that he had knowledge of the theft of the property in question, appellant calls attention to his repeated denials of such knowledge; that he submitted to a lie detector test; that he gave his true name to Mr. Parker when he attempted to sell the typewriter to the latter, and that he stood by while Mr. Parker made a telephone call to the police to ascertain whether or not the typewriter was stolen.

██ ''While guilty knowledge of the larceny is an essential fact to be proved in a prosecution for receiving stolen goods, such knowledge need not be that actual and positive knowledge which is acquired from personal observation of

the fact.'' (*People* v. *Mercado,* 59 Cal.App. 69, 72 ⌊209 P. 1035⌋.)

▮ Whether the accused knew that the goods were stolen is to be determined by all the facts of the case. ▮ Such knowledge may be inferred from the surrounding conditions and circumstances, as for instance, that the goods were acquired from a person of questionable character (*People* v. *Moore,* 137 Cal.App. 130, 132 [30 P.2d 79] ; *People* v. *Stollmack,* 18 Cal.App.2d 471, 477 [64 P.2d 162] ) ; that the accused gave evasive answers to material questions with reference to the ownership of the stolen property; the manner in which he claims to have acquired such property, or as is generally stated, a failure on the part of the accused to ''satisfactorily explain his possession'' (*People* v. *Jacobs,* 73 Cal.App. 334, 340 [238 P. 770] ; *People* v. *Juehling,* 10 Cal.App.2d 527, 531 [52 P.2d 520] ; *People* v. *Cox,* 117 Cal.App. 254, 258 [3 P.2d 581] ) ; or that he denied possession of the goods if such denying is shown to be false (*People* v. *Levison,* 16 Cal. 98, 99 ⌊76 Am.Dec. 505⌋).

In the case now engaging our attention, appellant claimed to have received the typewriters and the adding machine from one Joe Taylor with whom he had ''done time'' in the county jail. It could reasonably be inferred that such former inmate of the county jail was a person of unsavory or questionable character and known by appellant to be such.

▮ When first arrested, appellant told the officer that the typewriter he was attempting to sell belonged to his wife. Later he admitted this statement was false. He then stated he had received the machines from one Joe Taylor outside a café on East Fifth Street. When the appellant was shown some police photographs taken from the Los Angeles Police Department files, he identified one as being that of Joe Taylor, but not the Joe Taylor who gave him the machines, although it might have been the Joe Taylor that he ''did time'' with in 1947. He also told an officer that he had an idea that the merchandise was ''hot.'' No showing was made at the trial that any attempt was made to secure the presence of Joe Taylor as a witness. Having in mind the rule as to the *quantum* of evidence sufficient to support a conviction on a charge of receiving stolen goods, knowing them to be stolen, and in view of the conflicting, vague and evasive explanations of his possession of the property in question as given by appellant at different times, we are satisfied that the trier of facts was justified in finding appellant guilty. Added to the fore-

going is the fact that when arrested, one of the arresting officers asked appellant how he got to Pasadena, and in reply he stated that a friend of his named Robertson had taken him to Pasadena in the appellant's old model Ford car, and had then gone to see a girl friend, and would return for the appellant in about half an hour. Shortly afterwards, an Oldsmobile was found parked on a street in Pasadena, and in it were a typewriter and an adding machine which were identified as having been stolen.

Later, the appellant stated that the Oldsmobile belonged to his brother, but that he, the appellant, did not know that it was in Pasadena, as he had not taken it there. Later he told an investigator that when he received the machines from Joe Taylor, the latter had backed his Plymouth up and transferred the machines to the trunk of the Oldsmobile.

Thus, the appellant at first denied possession of the machines found in the Oldsmobile, and then admitted that the denial was false, thereby furnishing a basis for the inference that he knew that they were stolen.

The inference that appellant received the property for his own gain, within the definition of the crime charged against him as contained in Penal Code, section 486, was reasonably justified by his statement when asked by an officer, "Well, what kind of a deal did you have with Taylor as to what remuneration you were to receive?" and to which appellant replied, "Oh, I thought I would make a fast buck on the deal."

In view of our holding that nothing which happened prior to the trial materially affected the fairness thereof or resulted in a denial of due process of law, coupled with the fact that there was no miscarriage of justice, a reversal of the judgment would be without justification (Cal. Const., art. VI, § 4½).

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.