[Crim. No. 3314. First Dist., Div. Two. July 11, 1957.]

THE PEOPLE, Respondent, v. JAMES J. BRUMBACK,
Appellant.

Leo R. Friedman for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco) and Norman Elkington, Assistant District Attorney, for Respondent.

DRAPER, J.—Three defendants, appellant, Adolph Edward Bigarani, and Frank Mendes, were charged with conspiracy to violate Penal Code, section 496 (receiving stolen property), and by separate indictment were charged with receiving stolen property. At the trial of all three defendants, the jury disagreed. Appellant then moved for separate trial, the motion was granted, and, with consent of the district attorney, the indictments were dismissed as to Bigarani and Mendes. On trial of appellant alone, the jury again disagreed. On this third trial, Dr. Brumback was convicted of both charges, and appeals.

The property here involved was taken from the wholesale jewelry establishment of Paul de Vries, Inc., San Francisco, in an armed robbery which occurred Friday, February 18, 1955. Mendes, one Sorrentino and Bigarani were convicted of that robbery and of conspiracy to rob, and the conviction was affirmed by this court. (*People* v. *Sorrentino*, 146 Cal.

App.2d 149 [303 P.2d 859].) The dismissal of the present indictments as to Bigarani and Mendes followed their conviction in the robbery case.

Two armed men (Mendes and Sorrentino) held up the jewelry store at 11 a. m., taking diamonds and jewelry of a wholesale value of about $100,000. Most of these stones were unset, but some were in rings. The robbers also took $3,200 in currency, including $2,000 in $100 bills. The robbers left shortly after 11 o'clock. Bigarani received a telephone call about 12 noon. At about 1 o'clock, he was seen leaving, with Mendes, an apartment which Mendes shared with Sorrentino. Mendes was carrying a package. About 1:30 p. m., Bigarani telephoned appellant, a dentist, at his office and made an appointment to meet appellant there at 2 p. m. Appellant testified that at his office Bigarani said a friend wanted to know if appellant would keep a package over the weekend for him. Appellant and Bigarani left the office, 942 Market Street, and walked together to the Embassy Hotel, at Polk and Turk Streets. There they went to Bigarani's room. Mendes was there. After a time, Bigarani and appellant left the room, the former carrying a paper bag. In a statement made to police the next day, appellant said that Bigarani got "the stuff" together in this room. "The stuff" consisted of a large number of diamonds in paper packets placed in a paper bag, and an envelope full of rings. There is testimony that appellant Brumback had long had an interest in gems, had taken part of a course in "gemology" and knew what "diamond papers" or "diamond packets" were. At the hotel elevator, Bigarani gave the bag to appellant, who carried it as they walked to appellant's bank at 1 Powell Street. There appellant secured his safe deposit box at 4:47 p. m. and took it to one of the rooms provided for customers of the bank's safe deposit service. Appellant opened the box and Bigarani took objects from the bag which appellant placed in the box.

There is conflict in the evidence as to the time Bigarani, Mendes and appellant were together in the hotel room. Bigarani and Mendes exercised their privilege against self-incrimination. Appellant testified that he did not leave his office until shortly after 3 p. m. and that he and Bigarani had sandwiches and coffee before they went to the room. However, in statements made to police officers he had admitted leaving his office shortly after 2 o'clock and going directly to the hotel room.

Saturday morning, the day following the robbery, appellant was interviewed by police officers. The safe deposit vault could not be opened until Monday, and it was opened by appellant, in the presence of police officers, early Monday morning. Appellant's box then contained a large number of the diamonds taken in the robbery. An envelope of the Embassy Hotel contained a number of the stolen rings. An envelope upon which was plainly printed ''Paul de Vries, Inc., a name famous for diamonds for three generations,'' contained a number of packets of diamonds in ''diamond papers.'' The box also contained a number of bundles of currency in denominations of $100, $50 and $20. Appellant testified that the total of currency was about $57,000. Also in the box was a watch which had been taken by Mendes in another robbery January 24, 1955.

Bigarani had been arrested the day after the robbery. He produced for police a suitcase containing a number of pearl necklaces, old gold, and some diamond papers, all of which were taken from the jewelry store in the robbery.

The two San Francisco afternoon newspapers were on the street before 2 p. m. February 18 with large headlines announcing the robbery. One of these papers carried a photograph of Mendes. On the route taken by Bigarani and appellant as they walked from the latter's office to the Embassy Hotel, and from there to the bank, were a large number of newsstands prominently displaying these newspapers.

Appellant strongly contends that, unless there was an arrangement between him, the robbers and Bigarani before the robbery, he cannot be guilty of conspiracy with the robbers to receive stolen property.

This question has arisen in this state in determining who are accomplices. The rule is that the thief or robber and the receiver of the stolen goods are not accomplices where the arrangement between them for sale or transfer of the stolen goods is made after the theft. This is because the thief cannot receive from himself, and thus cannot be an accomplice in the crime of receiving. The receiver, having had no connection with the theft, is not an accomplice of the thief. They are guilty of different crimes—theft and receiving stolen property—and, since they are not liable to prosecution for the same offense, they cannot be accomplices. (*People* v. *Lima*, 25 Cal.2d 573 [154 P.2d 698]; *People* v. *Raven*, 44 Cal.2d 523 [282 P.2d 866]; *People* v. *Davis*, 124 Cal.App.2d 173 [268 P.2d 66].) However, this rule is subject

to a well recognized exception. Where thief and receiver conspire before the theft that the one shall steal and the other receive the stolen property from him, then they are accomplices. In such case, the thief is an accomplice in the crime of receiving stolen property, and the receiver an accomplice in the theft. (*People* v. *Lima, supra.*)

If only Mendes and appellant were involved, there might be merit to appellant's argument that he could be a conspirator or accomplice of Mendes, the robber, only if it were shown that he conspired in advance of the actual robbery. But that is not our case. Here, there can be no question that Mendes and Sorrentino, the robbers, conspired in advance of the robbery with Bigarani. The time schedule of delivery of the stolen goods to Bigarani is altogether too tight to be mere coincidence, or to permit an arrangement made among them after the perpetration of the robbery. Under the above exception, Bigarani, as receiver, was the accomplice of Mendes and Sorrentino in the robbery, and they of Bigarani in receiving the goods. Thus there is no bar to the charge of conspiracy among Bigarani, Mendes and Sorrentino. The question then is whether appellant joined that preexisting conspiracy. It is apparent from the evidence recited above that the jury could readily find that Dr. Brumback went to Bigarani's room within three hours of the time the robbers left the scene of the crime, and could infer that he there saw the loot under circumstances which made its character as stolen property fully known to him, that he was made fully aware of the conspiracy at least insofar as it involved Mendes as robber and Bigarani as receiver and, with this knowledge, joined the conspiracy. One who joins a conspiracy after it is formed, and actively participates in it, thereby adopts the previous acts and declarations of his fellow conspirators. (*People* v. *Sherman*, 127 Cal.App.2d 230, 240 [273 P.2d 611]; *People* v. *Griffin*, 98 Cal.App.2d 1, 44 [219 P.2d 519].) Thus Brumback cannot argue that there is no one with whom he could conspire unless his own agreement to receive the property was made before the actual robbery. The other conspirators, in removing that bar as to themselves, made it unavailable to one who, after the robbery, knowingly joined their preexisting conspiracy.

Thus it was not error for the court to refuse instructions 35, 37 and 38, all based on the theory that appellant could be a conspirator only if he joined the conspiracy before the robbery. As pointed out, a conspiracy existed before the

robbery. When appellant joined it, even though after the robbery, he accepted all the liability of the conspirators. The offered instructions were objectionable as not fully and accurately stating the rule urged by appellant. In any event, as just demonstrated, they were not proper in this case. The court did fully instruct the jury that "Before . . . Brumback can be found guilty of being a member of . . . a conspiracy which resulted in the commission of the crime of receiving stolen goods, the evidence in this case must establish that the defendant Brumback had knowledge of the existence of a conspiracy . . . to commit such crime of receiving stolen goods, and that he intended to become a member of· that conspiracy and to do some act or acts in furtherance thereof." Together with the full instructions defining conspiracy, this amply stated the circumstances under which Brumback could be found guilty of the conspiracy charged.

The foregoing discussion also disposes of appellant's contention that no act or declaration of the other conspirators, before his joining the conspiracy, could be admitted as against him. If, as the jury impliedly found under the instruction just quoted, he knowingly joined and furthered an existing conspiracy, he is chargeable with the prior acts and declarations of the conspirators. (*People* v. *Sherman, supra; People* v. *Griffin, supra,* and cases cited therein.)

■ Appellant also asserts error in the admission in evidence of six $100 bills found in the possession of Lindsey (the lookout at the robbery), five such bills found on Sorrentino, and 55 such bills carried by Mendes when he was arrested. Lindsey and Sorrentino were arrested the evening of the robbery, and Mendes in the early morning of the next day. Respondent points out that only $3,200 in currency was stolen from the jeweler, including 20 $100 bills, while 66 such bills were found on the three robbers. It is admitted that appellant had large sums in such bills in the safe deposit box which he and Bigarani visited together after meeting Mendes and picking up the stolen diamonds at Bigarani's hotel room. Respondent argues that the jury could infer that a payment in bills of large denomination was made by appellant to Bigarani at the safe deposit vault, and distributed by him to Mendes. Possession of currency of denominations not commonly carried may afford a basis for inference as to the source of the money. (*People* v. *Chapin,* 145 Cal.App.2d 740, 747 [303 P.2d 365].) Appellant argues vigorously that $100 bills are commonly carried, and that their possession cannot be

the basis for any inference as to their source. Without intending any complaint, we suggest that a jury is at least as competent as the judiciary to determine the circulation frequency of 100 bills. The evidence was admissible (*People* v. *Thompson*, 120 Cal.App.2d 359 [260 P.2d 1019]), as a basis for such inference as the jury might reasonably draw. While we might hesitate to sustain a judgment based upon such inference alone, there is in this case substantial evidence, without regard to that of the currency, to sustain the conviction.

▉▉▉ Appellant contends that the trial court erred in admitting evidence of Bigarani's conviction, in 1945, of defrauding the government by filing a false claim with the Maritime Commission. Bigarani served a term in federal prison for this offense. Appellant denied knowing of this conviction, and argues that, in the absence of such knowledge, reference to the Bigarani conviction was improper. ▉▉▉ Evidence of the known questionable character of the person from whom stolen goods were obtained is admissible for such bearing as it may have upon the issue of defendant's knowledge that they were stolen. (*People* v. *Moore*, 137 Cal.App. 130, 132 [30 P.2d 79].) There the defendant had met the asserted thief in prison. This case is not so strong. ▉▉▉ However, appellant, in a statement to the police, had admitted knowing Bigarani since 1943. Thus there was some basis for inference that he must have known of Bigarani's conviction and incarceration in 1945. In any event, the circumstances of appellant's acquisition of the stolen property clearly support the jury's finding that he knew the jewelry was stolen. Thus the evidence of Bigarani's conviction was not prejudicial.

▉▉▉ Error is assigned in the admission of another item of evidence. One Cardinelli was shown to be a friend of Mendes, and there was evidence from which the jury could infer that their association was a close one. The court admitted evidence that a watch, which Cardinelli testified was his, was purchased by appellant from a jeweler (not de Vries). Before the robbery, it was taken to the seller by either appellant or his office nurse to be repaired. Appellant later telephoned the jeweler to say that a party would come in to pick up the watch, and directed its delivery to this unnamed person upon payment by him of $120. Cardinelli picked up the watch and paid the money. ▉▉▉ In a conspiracy case, evidence is admissible to show association of the alleged conspirators. (*People* v. *Brown*, 131 Cal.App.2d 643, 661 [281 P.2d 319]; *People* v. *King*, 114 Cal.App.2d 95, 105 [249 P.2d 563].)

■ Here the evidence showed close association of Mendes and Cardinelli and purchase of a valuable watch at a low price by the latter from appellant. We cannot say that this evidence is too remote to have any evidentiary value. Its weight was for the jury to determine.

The testimony that the watch was brought in for repairs by appellant or his nurse was given by Coppo, an employee of the jewelry store. At earlier trials, he had so testified. At this trial, his testimony was that the watch was brought in by Bigarani. The prosecution claimed surprise, and was allowed to impeach Coppo by his former testimony. Appellant argues that at this trial the only Coppo testimony connecting appellant with this transaction is that which came in by way of impeachment. He is mistaken. In the course of his cross-examination by the prosecution, Coppo testified that his change of testimony as to who brought in the watch for repairs stemmed from a conversation he had, after the last preceding trial, with a fellow employee. He then admitted that his present testimony that Bigarani had brought the watch in for repairs was based wholly upon this woman's statements to him, rather than his own recollection. He then was asked "It is your recollection, is it not, that Dr. Brumback or his nurse brought that watch in to you?" He answered "That's right." Thus there was direct testimony, at this trial, of the questioned fact.

Appellant asserts error in the admission in evidence of a recorded statement taken from appellant by police the day following the robbery. A transcript of the recording was presented to the trial judge. A number of accusations which were flatly denied by appellant were stricken. The recording was then edited to eliminate these stricken portions, and the edited tape recording was played to the jury. Appellant first states the rule that an accusatory statement is not admissible where it is flatly denied, without circumstances tending to give some incriminating effect to the manner of denial. (*People* v. *Teshara*, 134 Cal. 542 [66 P. 798].) ■ Of course, it is the conduct of a defendant in reference to an accusatory statement, and not the statement itself, which has evidentiary value. (*People* v. *Davis*, 43 Cal.2d 661, 670 [276 P.2d 801]; *People* v. *Goldstein*, 136 Cal.App.2d 778, 792 [289 P.2d 581].) Appellant then cites *People* v. *Simmons*, 28 Cal. 2d 699 [172 P.2d 18], for the contention that "mere portions of a lengthy conversation" cannot be introduced in evidence. But the Simmons case does not stand for the broad rule sug-

gested by appellant. There extended statements (one nine pages long) of third parties were given to defendant to read, and then he was asked as to the truth of the statement as a whole. This practice was criticized by the Supreme Court which, in passing, noted that it would be misleading to attempt to read but a portion of the lengthy statement to the jury. Here the entire interview was by question and answer. Each question and its answer could be separated from the whole without loss of intelligibility or context. There was no error in protecting appellant's rights by keeping from the jury those statements which were flatly denied or which were irrelevant. (*People* v. *Goldstein, supra.*) It should be noted that here there was no insistent demand or other compulsion upon one unwilling to answer. Rather, appellant appears, from the entire transcript, to have been willing to discuss the matter with the police.

 Appellant also complains of the refusal of two instructions which would specifically emphasize that his knowledge that the goods were stolen and his intent to withhold them from the owner must be proved beyond a reasonable doubt. But the jury was fully instructed upon the degree of proof required. In this case, where the knowledge and intent of appellant were the sole issue, it would have been redundant to give the requested instructions. Appellant complains also of failure to give an instruction that if Brumback "was merely an innocent agent" in receiving the jewelry, he could not be found guilty. To give this instruction would not only have been unduly repetitious of the full instructions on the burden of proof, but would have placed the court in the position of presenting to the jury an argument properly to be made only by counsel.

 When Bigarani and Mendes refused to testify on the ground that their answers would tend to incriminate them, their testimony was stricken. At the close of the case, the court instructed the jury that "when a witness other than a defendant refuses to testify" under this constitutional privilege, "you are not to draw from that fact any inference as to the guilt or innocence of the defendant." Appellant assigns this instruction as error, asserting that it emphasized to the jurors that Mendes and Bigarani had refused to testify. But the very instruction relied upon specifically told the jury that the refusal of these witnesses to testify was not to be considered. We see no error. Even if the instruction

were erroneous, it is by no means prejudicial to appellant, but in fact was beneficial to him.

Appellant concludes by arguing that the evidence is insufficient to sustain the judgment. But the evidence is substantial. As previously pointed out, the evidence of a conspiracy among Bigarani, Mendes and Sorrentino is strong and convincing. Shortly after the time Bigarani and Mendes first reached the former's hotel room, and obviously too soon to have permitted any great degree of concealment of the stolen jewelry, appellant arrived at the room where the bulk of the loot was. It is inferable that he saw the stolen property there and recognized it as stolen before carrying it to the bank. In any event, it is clear that appellant saw at least a substantial part of the stolen jewels when he placed them in his safe deposit box. He admitted knowing that the hotel envelope was filled with rings. His own long interest in gems and his study in that field somewhat enlarge his partial admission that he recognized the diamond packets for what they were. The wide publicity given to the robbery by the newspapers, and appellant's opportunities to see those papers before he reached his safe deposit box, lend weight to inferences based upon his placing in the box of an envelope bearing the printed name of the robbery victim. His attempted explanation that he thought Mendes was a jewelry salesman is itself significant, in view of the fact that the rings he presumed to be Mendes' wares were crammed carelessly into a hotel envelope, and the diamond packets were in much less than orderly array. The generally unprofessional handling and packing of the jewelry he received from Bigarani and Mendes was a factor which the jury could consider in determining whether he knew the jewelry was stolen. There is substantial evidence to support the charge of conspiracy. Of course, that evidence is largely circumstantial. An agreement for illicit activity is seldom susceptible of direct proof. (*People* v. *Robinson*, 43 Cal.2d 132, 137 [271 P.2d 865].) Here the jury was fully and fairly instructed as to its duty in weighing circumstantial evidence. The evidence of receiving stolen property is equally strong. We find no reason to disagree with the jury's conclusion.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied August 9, 1957, and appellant's petition for a hearing by the Supreme Court was denied September 4, 1957.