[Crim. No. 4714.   Second Dist., Div. Two.   May 9, 1952.]

THE PEOPLE, Respondent, v. JEWELL ASHBY GOULD, Appellant.

Lawrence William Steinberg for Appellant.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

FOX, J.—Defendant appeals from the judgment convicting him of receiving stolen property in violation of section 496bb of the Penal Code,[1] and from the order denying his motion for a new trial. The case was tried by the court sitting without a jury. Defendant challenges the judgment on the ground of the insufficiency of the evidence.

The articles involved are a lady's handbag which had been stolen from Virginia Haralson, and a mink coat, a lady's handbag and a watch, which had been stolen from the North Hollywood home of Mr. and Mrs. Frost between 5:30 and 10:30 on Thanksgiving evening, November 23, 1950. On the day following the Frost robbery one Joe Paladino, a café and bar owner, purchased the stolen coat from defendant, whom he had known about two and a half years. When defendant came to the Paladino residence he inquired of Paladino whether he wanted to buy a fur coat that belonged to a

---

[1]The section was amended in 1951 and renumbered section 496, Penal Code.

friend of his. Because of Paladino's interest in the coat defendant brought it into the Paladino home. Mrs. Paladino liked the coat so her husband purchased it, paying defendant $1,500 cash. The sale occurred between 8 and 9 o'clock in the evening. Mrs. Paladino saw someone whom she believed to be Mel Furlong in a car parked in front of the house. Furlong passed away late at night the next day. An experienced furrier to whom Mrs. Paladino took the coat for alteration fixed the retail value of the coat at $4,500 exclusive of taxes. If it were sold to a furrier who dealt in secondhand coats, he estimated it would bring $2,000.

Mrs. Furlong testified she was in the hospital on Thanksgiving and that her husband brought the coat to her room that night "a little after visiting hours" and offered it to her as a present. She declined the gift. Mr. Furlong did not sit down but stood by her bedside with the coat on his arm turned inside out. He did not hold the coat up or tell her where he got it. She did notice, however, "there was something on the inside that didn't look right." When Mrs. Frost recovered the garment the panel in the lining containing her name had been removed.

Defendant was arrested on November 30, about 11 a.m., at a motel on Ventura Boulevard, in Los Angeles. That evening officers investigated certain apartments at a motel near Arcadia. It was established that defendant and Betty Lou Pressler,[2] who were not married to each other, had registered at this motel on November 17th, just after midnight, as Mr. and Mrs. J. Gould. They were assigned bungalow No. 6 where they resided for approximately two weeks. In this bungalow officers found luggage containing both men's and women's wearing apparel. In one of the smaller suitcases which police released to Pressler they found feminine clothing and the Frost and Haralson purses.

The area around the Arcadia motel was searched, and under some leaves beneath a bush the officers discovered a plastic bag containing numerous items of jewelry, such as watches, brooches, pins and rings. In this bag was found the watch stolen from the Frost home. The bush was located behind a ledge near a wall about 35 to 40 feet from defendant's bungalow. A search of defendant's luggage brought to light a plastic bag of the same size and color as that found under

[2]The charges against her were dismissed prior to trial upon motion pursuant to section 995, Penal Code.

the bush, each having the same legend stamped on the bottom. Defendant denied any knowledge of the jewelry in this plastic container. Concerning the presence of the plastic bag found in his possession, he and Pressler gave the explanation that a friend by the name of Calvert, who lived in bungalow No. 7 at the Arcadia motel, had given them two in which to keep golf balls. In this connection the husband of the owner of the motel testified that the man who occupied bungalow No. 7 (Calvert) had offered to sell him a set of earrings and a brooch which he took out of a bag similar to those produced in court. The witness saw no other jewelry. Defendant had known Calvert, who had two aliases, for a number of years, and he had been in business with Furlong. He admitted Calvert and Furlong were acquainted.

Defendant's testimony did not touch upon the presence of the stolen purses. According to Pressler these purses were two of "approximately eight" she had purchased from Calvert for about $100 on the day after Thanksgiving. She "picked them out of about 18 purses which he [Calvert] took out of a suitcase . . ."

Pressler testified they lived in two different places during the period in question. Also, they had an apartment on Huston Street in Sherman Oaks, a suburban area of Los Angeles. It was the latter place to which Furlong brought the coat "sometime after the noon hour" on the day following Thanksgiving, according to defendant. He further testified that the transaction with Paladino took place "in the afternoon" sometime between 2 and 4 o'clock.

On the witness stand defendant admitted having been convicted of two felonies: one burglary and a violation of the National Stolen Property Act, and having served time in the state and federal prisons, respectively, therefor.

■ The elements of the offense created by the code are as follows:

1. That the property found in the possession of the defendant was acquired by acts constituting theft or extortion;

2. That the defendant received, concealed or withheld the property from the owners; and

3. That defendant knew the property was stolen. (*People v. Rossi,* 15 Cal.App.2d 180, 181 [59 P.2d 206].)

The basic rules here applicable are that an appellate court "will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found

by the jury to warrant the inference of guilt'' and that before a judgment of conviction ''can be set aside on appeal upon the ground of insufficiency of the evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict. *If the circumstances reasonably justify the verdict . . . the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.*'' (Italics added.) (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Green,* 13 Cal.2d 37 [87 P.2d 821]; *People* v. *Jones,* 36 Cal.2d 373 [224 P.2d 353].)

Applying these rules, the judgment of conviction must be sustained. The Frost home was burglarized between 5:30 and 10:30 p.m. on Thanksgiving Day, yet Furlong visited his wife at the hospital that night with the coat. She noticed there was something on the inside that did not look right. Apparently such disfigurement of the lining was readily noticeable upon casual observation. When Mrs. Frost regained her coat the panel in the lining containing her name had been removed. These facts would amply justify an inference that Furlong had not come by this coat honestly. That Furlong appeared at defendant's apartment in Sherman Oaks some time after the noon hour the next day was admitted. Furthermore, defendant sold the coat to the Paladinos that night. On that very same day, ''The day after Thanksgiving,'' defendant's paramour came into possession of a lady's handbag through Calvert which had been taken from the Frost home Thanksgiving evening. Less than a week later the Frost watch (with many other pieces of jewelry) was found hidden some 35 to 40 feet from defendant's Arcadia bungalow in a plastic container, the inscription on which is identical with one found in defendant's possession. In this connection it must be remembered that Calvert and defendant had been friends for a number of years and were living next door to each other at the Arcadia motel; that Calvert had been trying to peddle some jewelry; also, that defendant and Furlong had been in business together, and that Furlong and Calvert were acquainted. To this should be added the

fact that in addition to his Sherman Oaks apartment defendant maintained living quarters in two motels, and that the trial court might well disbelieve defendant's explanations and denials because of his two prior felony convictions. (Code Civ. Proc., § 2051; *People* v. *Riccardi*, 50 Cal.App. 427, 432 [195 P. 448].) These facts and circumstances would amply support an inference on the part of the trial court that defendant, Pressler, Furlong and Calvert constituted a ring engaged in the sale and disposition of stolen property, and that defendant was fully aware the fur coat had been stolen, that his paramour had two stolen handbags, and that he had hidden the bag of·jewelry containing the Frost watch.

The identity in size, color, material and markings of the plastic bag found in defendant's possession with that hidden only a few feet from his living quarters, which contained among ᵢother jewelry the Frost watch, supports an inference connecting defendant with this stolen item. The fact that the watch was thus hidden would indicate guilty knowledge of its stolen character. For the reason previously noted, the trial court was not required to accept defendant's story that Calvert was the source of supply of these plastic bags. (Code Civ. Proc., § 2051; *People* v. *Riccardi, supra.*) ▮ Likewise, the court was not required to accept as true the testimony of Pressler on this point. Her relationship with defendant put her in the position of one having an interest in the outcome of the case. This was a factor affecting her credibility to be weighed and evaluated by the trier of the fact. (*People* v. *Payton,* 36 Cal.App.2d 41, 55 [96 P.2d 991]; *People* v. *Peter,* 125 Cal.App. 657 [14 P.2d 166]; *People* v. *Peccole,* 92 Cal.App. 470 [268 P. 473].) ▮ It was for the trial court to determine whether defendant's denial of any knowledge of the hidden jewelry, and his and Pressler's explanation of the source of the plastic sacks, was satisfactory. (*People* v. *Shafer,* 101 Cal.App.2d 54, 59 [224 P.2d 778].) Apparently the court was not convinced of either.

If the court believed the Pressler story about the purchase of the purses from Calvert the inference that defendant knew of such purchase and the character of the property is amply supported. Such inference would find support in the relationship of defendant and Pressler; the relationship between Calvert and defendant; the number of purses purchased and amount paid; the number from which the selections were made; and ordinary human propensities. (Code Civ. Proc., §§ 1958, 1960; *People* v. *Hubler,* 102 Cal.App.2d

689 [228 P.2d 37].) If she made such purchases it would have been the natural and normal thing for Pressler to tell defendant. She does not claim that she did not tell him, or that he did not know about the purse deal. Also, it is significant that defendant did not give any testimony concerning the purses. From the number of purses Calvert had, the inference is virtually inescapable that he was selling stolen property. Of course the court may not have believed the Pressler story about buying the handbags for reasons previously noted. (*People* v. *Payton, supra.*) The court may have concluded the parties were simply dividing some of their loot, or that defendant had given these purses to his paramour with full knowledge of their history.

As to the fur coat, the trial court would have been justified in disbelieving defendant's story that he was merely helping a friend dispose of a coat which he had bought for his wife and which she did not want, so that he could get his money out of it. (Code Civ. Proc., § 2051; *People* v. *Riccardi, supra.*) On the other hand, the court would have been amply justified in concluding that defendant knew the history of the coat and had an interest in selling it. Supporting such an implied finding is the fact, according to Mrs. Furlong, that "there was something that didn't look right on the inside" of the coat. In view of Mrs. Frost's testimony that when her coat was returned the panel in the lining containing her name was gone, it was reasonable to infer that Furlong had removed the name and had done it in such manner that it was readily noticeable. Defendant could hardly have failed to discover this condition which Mrs. Furlong saw at a glance. It aroused her suspicions; it should have had a like effect on defendant. Then the price was disproportionately low. That too was a suspicious circumstance. Also, there was a conflict between defendant and Paladino as to when the sale took place. The former testified the sale was made in the afternoon; the latter that it was between 8 and 9 o'clock at night. This conflict was significant, and the trial court was justified in resolving it against the defendant. (Code Civ. Proc., § 2051; *People* v. *Riccardi, supra.*) If this was a nonprofit transaction for a friend who merely wanted to get his money out of a fur coat he had bought for his wife which she did not desire, natural human propensities would ordinarily have induced the owner to take an active part in attempting to make the sale. (Code Civ. Proc., §§ 1958, 1960; *People* v. *Hubler, supra.*) Furlong, however, remained outside in the car. The trial court could

reasonably have concluded this conduct was out of the ordinary in the absence of some explanation and consequently could have drawn an unfavorable inference as to the veracity of defendant's story. The close relationship between the parties was also a factor for the court's consideration on this point.

Finally, the trial court may well have concluded that it was not just a series of coincidences that a fur coat which had been stolen the night before should turn up at defendant's apartment some time after the noon hour the following day and be sold by defendant that evening under the circumstances here delineated; that a lady's handbag stolen in the same burglary came into the possession of his paramour also on the day following this burglary; and that a watch stolen from the same place should be found a week later hidden 35 to 40 feet from one of defendant's motel living quarters in a bag identical in size, color, quality and markings with one found in defendant's possession. The court was entitled to give weight to this *combination of circumstances.*

In a case such as this, all the circumstances must be considered together in determining whether the inference of guilt may be found. (*People* v. *Goodall,* 104 Cal.App.2d 242, 247-249 [231 P.2d 119].) When so considered there is ample evidence to support the judgment.

The basic difficulty with defendant's argument is that he would have this court reweigh the evidence, and draw inferences contrary to those drawn by the trial court. Under firmly established principles we are not at liberty to do this. (*People* v. *Newland, supra; People* v. *Hubler, supra.*)

The judgment and order denying motion for a new trial are affirmed.

Moore, P. J., concurred.

McComb, J., dissented.

Appellant's petition for a hearing by the Supreme Court was denied June 5, 1952.