[Crim. No. 2584. Third Dist. July 29, 1955.]

THE PEOPLE, Respondent, v. JOHN E. HARTRIDGE, Appellant.

John E. Hartridge, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

FINLEY, J. pro tem.*—Defendant has taken this appeal from a judgment of conviction by the trial court sitting without a jury, and from the order denying his motion for a new trial.

During the afternoon of June 21, 1954, one Álfred McNally burglarized a residence in Sacramento and stole therefrom certain distinctive articles of jewelry worth several thousand dollars. Later that same afternoon defendant, who had become acquainted with McNally while they were both inmates of Soledad Prison, took certain pieces thereof to a jewelry store in Sacramento, told the jeweler that he had been sent over by "Tony," a bartender at the Clayton Club, and asked if the articles were worth $200. The jeweler told defendant that "if somebody only wanted $200.00 for this jewelry, then it must be hot. If I was him, I would go tell Tony that, not to touch it with a ten foot pole, but because it is too good for too little." The jeweler also telephoned to Tony who was a friend of his and relayed the same information to him.

Still later that afternoon or evening defendant approached one Lennie Russell, an entertainer and master of ceremonies

---

*Assigned by Chairman of Judicial Council.

at the Clayton Club, and asked the loan of $200 to go to Reno. Russell refused and defendant left, returning a few minutes later with the same or some of the same articles of jewelry shown to the jeweler and asked Russell to lend him $150 thereon, stating that he would repay Russell the following Monday. Russell loaned the $150 and took the jewelry which he retained in his possession until the following Sunday when officers inquired about it and he turned it over to them. At the trial he testified that when he loaned the money he knew nothing about the jewelry having been stolen or presented to the jeweler, or of the jeweler's conversations with defendant or Tony.

Defendant was arrested by the officers on June 26, 1954. It is undisputed that in a voluntary conversation with them subsequent to his arrest, he denied possession of the jewelry in question at any time. In a later conversation with the officers he stated that McNally came to his room with the jewelry and wanted defendant to help him get rid of it. He took McNally to the Clayton Club where McNally remained outside while defendant entered and offered to sell the jewelry to Tony, the bartender. The bartender sent defendant to the jewelry store to have the articles appraised. While the appraisal was being made McNally remained outside on the sidewalk. Defendant then returned to the Clayton Club and told the bartender what the jeweler had said. Defendant identified the jewelry to the officers and stated that he gave it back to McNally, and that he was suspicious of how McNally had obtained it. In a still later conversation with the officers defendant stated that he gave McNally the money obtained on the jewelry from Russell and that he kept none of it. At the trial defendant did not testify or produce any evidence on his own behalf.

Under the heading of "Assignments of Error," defendant lists the following contentions in his opening brief:

"A—The Trial Court Erred in Admitting the Testimony of Mr. Russell.

"B—The Trial Court Erred in Admitting Portions of the Testimony of Mr. Parker Smith.

"C—The Verdict of the Court Was Insufficient Under Existing Laws.

"D—The Evidence is Insufficient to Sustain a Verdict of Guilty of Receiving Stolen Property.

"E—The District Attorney was Guilty of Prejudicial Misconduct Before the Court.

"F—THE TRIAL COURT ERRED IN DENYING A DEFENSE MOTION TO DISMISS THE INFORMATION.

"G—PREJUDICIAL MISCONDUCT ON THE PART OF THE DEFENSE ATTORNEY."

In support of his first specification of error appellant calls attention to several alleged discrepancies in Russell's testimony. His position is that because of these alleged discrepancies the trial court should not have believed Russell's testimony. This argument merely goes to the question of the credibility of the witness, and an appellate court cannot be called upon to substitute its appraisal of the witness and his testimony for that of the trial judge.

Appellant's next argument in connection with Russell's testimony· is that the evidence clearly indicates that Russell was an accomplice, and that under the rule laid down in *People* v. *Lima*, 25 Cal.2d 573 [154 P.2d 698], the uncorroborated testimony of an accomplice is inadmissible. Appellant claims that the test by which it is to be determined whether one is an accomplice or not is to ascertain whether or not he could be indicted for the offense for which the accused is on trial. He argues that since Russell took the jewelry in question and had possession of it under suspicious circumstances, these incidents, when linked together, constitute a violation of section 496 of the Penal Code thus establishing that Russell was an accomplice. Respondent's reply to this contention is that under the common law the uncorroborated testimony of an accomplice is sufficient to sustain a conviction, and that the only change in the common law brought about through the enactment of section 1111 of the Penal Code is that although corroboration is now required, this corroboration need only be slight and may even be circumstantial if it tends to connect the accused with the commission of the offense (*People* v. *Santo*, 43 Cal.2d 319 [273 P.2d 249] ; *People* v. *Griffin*, 98 Cal.App.2d 1 [219 P.2d 519] ; *People* v. *Simpson*, 43 Cal.2d 553 [275 P.2d 31].) Respondent also contends that in this case the question as to whether Russell was an accomplice was a question for the trier of fact, that impliedly the trier of fact, the trial judge here, found Russell not to be an accomplice, but that even if the finding had been to the contrary, the facts adduced disclose that the testimony of Russell was sufficiently corroborated by the testimony that defendant displayed the stolen jewelry to a jeweler for his appraisal and was advised

that it was "hot" and that he shouldn't touch it; that thereafter defendant used this jewelry on which to borrow money; and also by appellant's own statement, allegedly made to the officers and apparently believed by the court, that McNally's possession of the jewelry was suspicious; that he, defendant, was warned by the jeweler not to touch it; and also by defendant's failure to deny the transaction with Russell as well as the conflicting stories told to the officers by defendant. Respondent contends that all this evidence corroborates the testimony of Russell, even assuming that he be regarded as an accomplice. (*People* v. *Gallardo,* 41 Cal.2d 57 [257 P.2d 29]; *People* v. *Henderson,* 34 Cal.2d 340 [209 P.2d 785]; *People* v. *Hooker,* 126 Cal.App.2d 394 [272 P.2d 839]; *People* v. *Griffin,* 98 Cal.App.2d 1 [219 P.2d 519]; *People* v. *Gould,* 111 Cal.App.2d 1 [243 P.2d 809].)

We are convinced that respondent's position is well taken. We are satisfied that under the law the testimony in the record in support of Russell's testimony, if believed by the trier of fact, is legally sufficient to qualify as corroborating testimony. (See *People* v. *Bycel,* 133 Cal.App.2d 596 [284 P.2d 927]; *People* v. *Lima, supra;* *People* v. *McKinney,* 71 Cal.App. 2d 5 [161 P.2d 957]; *In re Morton,* 179 Cal. 510 [177 P. 453].)

Appellant challenges the admissibility of the testimony of Deputy Sheriff Smith as to admissions appellant made in conversation with the officers subsequent to his arrest on the ground that such statements were not made voluntarily. However there is no evidence in the record to substantiate this contention. An examination of the record discloses that in each instance the officer testified that the statements made by appellant were made voluntarily and without any force, threats or promises being made to him. ■ The record contains no evidence to the contrary; hence any attempt by appellant to challenge the voluntariness of these statements for the first time on appeal by material outside of the record is unavailing. (*People* v. *Collins,* 117 Cal.App.2d 175 [255 P.2d 59].) ■ Even if it be assumed that the statements made by appellant to the officers could be considered as confessions, they would nonetheless be voluntary even though the officers had failed to advise appellant of his right to counsel, his right to remain silent, or that his statements might be used against him. (*People* v. *Landry,* 106 Cal.App.2d 8 [234 P.2d 736].) Appellant did not take the stand in his own behalf, and there is no evidence in the record that the statements made by appellant to the officers were other than vol-

untary. We therefore hold that the testimony of Officer Smith was properly admitted by the trial court.

Appellant's next contention is that the verdict of the court was insufficient under existing laws, and he cites the case of *People* v. *Tilley,* 135 Cal. 61 [67 P. 42]. The finding of the court in the instant case, as disclosed by the clerk's minutes, was that ". . . the court being fully advised finds that the defendant JOHN HARTRIDGE [is] Guilty of the crime of Receiving Stolen Property as charged in the information." We find no impropriety in this finding by the trial court, and *People* v. *Tilley, supra,* is not authority to the contrary. In that case the verdict of a jury was involved and not the finding of a trial judge. However the finding made by the court here would have been sufficient, even had it been contained in a jury verdict as will appear from the case of *People* v. *Foogert,* 85 Cal.App.2d 290 at 298-299 [193 P.2d 14], where the court held that *People* v. *Tilley, supra,* preceded section 4½ of article VI of the Constitution, and such being the case injury was presumed from error. The holding in the Tilley case is further questioned in *People* v. *Chavez,* 11 Cal.App.2d 388 [53 P.2d 1020], and in *People* v. *McKinney, supra.* We hold that appellant suffered no prejudice by reason of the trial court's choice of words in its finding.

As the next point in order appellant urges that the evidence is insufficient to sustain a verdict of guilty of receiving stolen property. At the close of the prosecution's case, counsel for appellant moved to dismiss the information on the ground that there had been insufficient evidence to show that the appellant had guilty knowledge that the jewelry was stolen. From the discussion appearing above it is obvious that there was more than sufficient evidence from which it could be inferred that the appellant had knowledge of that fact.

"While guilty knowledge of the larceny is an essential fact to be proved in a prosecution for receiving stolen goods, it is not essential that such knowledge be actual and positive; it may be circumstantial and deductive (*People* v. *Mercado,* 59 Cal.App. 69, 72 [209 P. 1035]). Among the elements the courts have found persuasive as giving rise to an inference of guilty knowledge is a disproportionately low price paid (*People* v. *Gould,* 111 Cal.App.2d 1, 7 [243 P.2d 809]) or that the accused denied possession of the goods if such denial is shown to be false (*People* v. *Levison,* 16 Cal. 98, 99 [76 Am.Dec. 505])." (*People* v. *Bycel,* 133 Cal.App.2d 596, 599 [284 P.2d 927].) We hold that there was ample legally suf-

ficient evidence to sustain the trial court's finding, and beyond that we are not required to go. Appellant's motion to dismiss the information was properly denied.

It is next contended by appellant that the district attorney was guilty of prejudicial misconduct before the court. In support of this contention, he argues that the district attorney entered into a conspiracy with the witness Russell, and that he permitted and solicited Russell to make false and perjured testimony. This contention is wholly unsupported by the record, nor was the point raised in the trial court. Therefore it cannot be considered on appeal. (*People* v. *Collins*, 117 Cal.App.2d 175 [255 P.2d 59] ; *People* v. *Ruiz*, 103 Cal.App.2d 146 [229 P.2d 73].)

The further argument ₀is made that the district attorney amended the information and that appellant was not served with a copy thereof as amended until the trial date. The record shows that the only amendment made to the information was the incorporation of the charge that defendant had been previously convicted of a felony. Appellant admitted the prior conviction ; therefore, no issue was presented for determination that had not been raised by the original information and appellant's plea of not guilty. The record fails to disclose that appellant or his counsel made any objection at the time or requested any continuance of this matter by reason of the filing of the amended information. Hence the point may not be raised for the first time on appeal. (*People* v. *Simpson*, 43 Cal.2d 553 [275 P.2d 31].)

Appellant's final claim of error is that there was prejudicial misconduct on the part of the defense attorney. As will appear from the record, appellant was represented at the trial by counsel of his own choice. At no point during the course of the trial did he make any protest to the court concerning the procedure adopted by his counsel, nor did he in any way manifest to the court any dissatisfaction with the manner in which his case was being handled. In no proceeding subsequent to the trial was this point raised in the trial court. Therefore appellant may not now attack the competency of his counsel. As stated in the case of *In re Ward*, 28 Cal.2d 583 at 586 [170 P.2d 665], "The evidence and findings reveal that upon his trial petitioner was represented by a person of his own choosing and he must, therefore, abide the results of his selection of a representative."

As was indicated in *United States ex rel. Feeley* v. *Ragen*, 166 F.2d 976, a defendant is entitled to a fair trial,

not a perfect one, and his counsel is not required to be infallible. The record discloses that appellant was granted the fair trial to which he was entitled under our Constitution and laws, and we cannot say from the record or from the fact that appellant was found guilty that he was deprived of any right guaranteed to him. The fact that appellant was convicted is no evidence that his counsel was incompetent. Allegations of mistakes on the part of trial counsel such as that he failed to have a defendant testify or offer testimony on his own behalf, or that he failed to obtain available evidence or to ask for a continuance are not recognized as grounds for habeas corpus, nor are they entitled to consideration here if such points were not raised in the trial court. (*Morton* v. *Welch,* 162 F.2d 840; *Ex parte Haumesch,* 82 F.2d 558; *Farrel* v. *Lanagan,* 166 F.2d 845.) There is nothing in the record that discloses any lack of professional skill, ability or loyalty on the part of defense counsel, and where a record does not disclose such incompetence that it must be considered an abuse of discretion on the part of the trial judge not to intervene on behalf of a defendant during a trial, claims and specifications dehors the record may not be considered for the first time on appeal.

The judgment is affirmed.

Van Dyke, P. J., concurred.