[Crim. No. 5916. Second Dist., Div. Three. Sept. 6, 1957.]

THE PEOPLE, Respondent, v. MORRIS BOINUS, Appellant.

Albert Flaxman and Sidney Williams for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

VALLÉE, J.—In a nonjury trial defendant was convicted of receiving stolen property. He appeals from the judgment (Pen. Code, § 1237) and the order denying his motion for a new trial.

In April 1956 Carolyn Funk was about to move from her apartment in an apartment house owned by defendant. Defendant occupied an apartment in the house. At Miss Funk's request defendant went to her apartment. She showed him two fur coats which had been stolen from their owner on March 29, 1956. She told him she "had to get everything that was hot out of the apartment," and asked him if he would buy the two fur coats. Defendant said he would, and paid her $10 for them. She gave him a clock which also had been stolen and asked him to keep it for her.

Defendant was arrested in his apartment on June 20, 1956. The arresting officers found the two fur coats and the clock in his apartment. One of the officers asked him to whom the fur coats belonged. Defendant said they belonged to his wife. Either on the way to or on arriving at the police station one of the officers again asked defendant to whom the fur coats belonged. Defendant replied, "Well, those two cheap ones [not the ones the subject matter of this prosecution] belong to my ex-wife. The others I bought from a fellow who came to the door for $50," that he did not know the man's name, he "never saw him before. He just came to the door with six furs, and I bought them for $50." The officer said to defendant, "Well, some of these furs have initials in them and so forth. Weren't you curious about that?" Defendant said, "No." The officer asked defendant where he got the clock. Defendant said he bought it from some fellow who came to the door, that he did not know the man's name, and he had never seen him before or since.

After the preliminary hearing Miss Funk was attending Los Angeles City College. On September 4, 1956, as she was entering the college grounds, defendant approached her and this conversation occurred with respect to her testimony at the preliminary: Defendant: "Why did you tell them that you said the stuff was hot?" Miss Funk: "That is what I said. That is all there is to it." Defendant: "You didn't have to say that. There was nobody in the apartment but you and me and that wasn't necessary to say." Miss Funk told defendant that that was what she had said, "that the stuff was hot," at the preliminary hearing, and that that was exactly what she was going to say when she went to court again. Defendant: "Well, couldn't you change your story a little bit? You don't have to say that when you go back to court." Miss Funk: "I don't want to get a perjury charge against me or contempt of court. I am going to testify exactly the same way the second time." Defendant told her he wanted her to go to see his lawyer, "Talk to my lawyer and we will try to work something out." Miss Funk told him she would not go with him. Defendant said there would be some way she could change her testimony, she just would not have to say exactly what she said before, "to try to soften it up a little bit."

Defendant testified he received the property from Miss Funk as security for a $10 loan; he did not hear Miss Funk say the coats were "hot." He denied knowing the property was stolen.

Defendant first claims the evidence is insufficient to sustain the judgment. He says there is no evidence that he received the two fur coats and the clock knowing they had been stolen. Every person who buys or receives property which has been stolen, knowing the same to have been stolen, is guilty of a public offense. (Pen. Code, § 496.) The elements of the offense charged are: 1. The fur coats and clock were stolen. 2. Defendant received them. 3. Defendant knew they were stolen. The first two elements are conceded.

■ Although guilty knowledge of the fact that the property was stolen is an essential fact to be proved in a prosecution for receiving stolen property, such knowledge need not be that actual and positive knowledge which is acquired from personal observation of the fact. (*People* v. *Boyden*, 116 Cal. App.2d 278, 287 [253 P.2d 773].) It is not necessary that the defendant be told directly that the property was stolen. (*People* v. *DeVaughn*, 136 Cal.App. 746, 751 [29 P.2d 914].) Knowledge may be circumstantial and deductive. (*People* v.

*Bycel,* 133 Cal.App.2d 596, 599 [284 P.2d 927]; *People* v. *Hartridge,* 134 Cal.App.2d 659, 665 [286 P.2d 72].) ■ Among the elements from which knowledge may be inferred are that the property was obtained from a person of questionable character (*People* v. *Stollmack,* 18 Cal.App.2d 471, 477 [64 P.2d 162]), and the failure of the accused to satisfactorily explain his possession. (*People* v. *Juehling,* 10 Cal.App.2d 527, 531 [52 P.2d 520].) ■ Possession of stolen property, accompanied by an unsatisfactory explanation of the possession or by suspicious circumstances, will justify an inference that the property was received with knowledge it had been stolen. (*People* v. *Malouf,* 135 Cal.App. 2d 697, 707 [287 P.2d 834].) It is enough if, considering all the evidence, which may be circumstantial, an inference of guilt may be found. (*People* v. *Goodall,* 104 Cal.App.2d 242, 247 [231 P.2d 119].)

Defendant knew the furs were "hot." Miss Funk told him so. Defendant lied to the officers. He told them the furs belonged to his wife, that he had purchased them from an unknown man at the door. At the trial he had a new story—that he had received the property from Miss Funk as security for a $10 loan. He attempted to get Miss Funk to change her testimony. He was evasive on the witness stand. The trial judge said of defendant, "I observed him during his testimony here and he was evasive," that he did not believe him, and that he inferred defendant "knew it was hot." ■ The trial judge was not compelled to believe the testimony of defendant that he had no knowledge the property was stolen. (*People* v. *Morrow,* 127 Cal.App.2d 293, 295 [273 P.2d 696].) ■ There is ample evidence to sustain the implied finding that defendant knew the property was stolen. (*People* v. *Malouf,* 135 Cal.App.2d 697 [287 P.2d 834]; *People* v. *Hartridge,* 134 Cal.App.2d 659 [286 P.2d 72]; *People* v. *Gould,* 111 Cal.App.2d 1 [243 P.2d 809]; *People* v. *Steinberg,* 51 Cal. App.2d 221 [124 P.2d 341]; *People* v. *Seerman,* 43 Cal.App. 2d 506 [111 P.2d 457]; *People* v. *Murray,* 42 Cal.App.2d 209 [108 P.2d 748]; *People* v. *McClain,* 115 Cal.App. 512 [1 P.2d 1023].)

■ Defendant argues that Miss Funk was granted immunity, that she was not sure defendant heard her when she told him she "had to get everything that was hot out of the apartment," and that her testimony is therefore not worthy of belief. True, she was granted immunity. But the weight to be given to her testimony under all the circumstances of the

case was for the trial judge, not this court. ■ Testimony which is subject to justifiable suspicion does not justify reversal of a judgment. (*People* v. *White,* 43 Cal.2d 740, 747 [278 P.2d 9].) If the circumstances reasonably justify the judgment—they do here—the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the trier of fact. (*People* v. *Green,* 13 Cal.2d 37, 42 [87 P.2d 821].)

Defendant claims the court committed prejudicial error in admitting, over his objection, evidence tending to show separate offenses. Defendant was on the witness stand. On redirect by his counsel he testified: "Q. You were asked by the District Attorney if on these two articles you told him [the arresting officer] you were holding them for money due you. Did you tell him or explain to him about any of the other articles, that you were holding them either for money due or rent due, that you had taken articles? A. No. Q. Did he ever ask you that question? A. No, he never did. Q. Did he ever ask you if you were holding any of these articles for rent for your furnished apartments? A. No, he never did. Q. Did he ever ask you if you were holding any of these articles because people owed you money? A. No. Q. And you didn't explain it to him? A. I did not." On recross he was interrogated by the district attorney: "Q. There was, though, conversation between yourself and the officer concerning your possession of these other articles that were there in the apartment, was there not? A. There was, after he mentioned about the coats. There was another question that he asked me. Q. There were a number of questions asked concerning all of these items that were there in your apartment, were there not? A. There were questions he asked me, yes. Q. By Mr. Carr [District Attorney]: Did you make any statements concerning any of these items in your apartment, other than the fur coats? A. Yes. Mr. Williams [attorney for defendant]: Just for the purpose of the record, your Honor, I object to this under the Court's previous ruling that this would be incompetent, irrelevant and immaterial as to any other items in the apartment. Mr. Carr: May I point out to your Honor that on redirect counsel opened it up. The Court: I am afraid you did, counsel. Overruled. Q. By Mr. Carr: Your statement to that was, 'Yes'? A. Yes. Q. Now, following your arrest, you were in the apartment for at least an hour with the officers, weren't you? A. About close to an

hour. . . . Q. All right. In many instances at least the officer had some item in his hand that he was talking to you about; isn't that right? A. No. Q. In none of them? A. Not in his hand; he pointed to them. Q. All right. He pointed to items and he talked to you about them, is that right? A. That is right. Q. Did you, in any instance, tell the officer that you were holding any item that he pointed to because a tenant had moved out and hadn't paid the rent? A. I didn't mention that to him. Q. Well, the officer questioned you about some of these items that he was pointing to, didn't he? A. To a group of them; not to any individual one. Q. He asked you where you got them, didn't he? A. He did ask where I got them. Q. As a matter of fact, you told him that you had bought them from some man who had come to the door, and when he asked you what the fellow looked like, you said you couldn't describe him, that you had never seen him before? A. He never told that to me or asked me that. Q. He never asked you where you got them? A. He did, but not in the conversation that you mentioned, that somebody came to the door. That I didn't hear from him, or I didn't say that. Q. All right. Now, he questioned you concerning these other items? A. That is right. Q. You stated that you never told the officer that you were holding any of those items or any group because a tenant had failed to pay the rent? A. I didn't mention that to the officer at the time. Q. At the time. Are you emphasizing the time or did you ever say that to him; I will put it that way. A. No, I never said that to the officer. Q. At any time? A. No. Q. All right. Now, in connection with any group of items or any particular item that he pointed to, exclusive of the fur coat, do you recall an item in which the officer said, 'Where did you get that,' and do you recall your reply to that? Do you have any recollection now of any one instance? A. No, not of any individual instance. Q. Now, you had a number of radios in there, didn't you? A. I did. MR. WILLIAMS: Unless the Court considers that our objection is a continuing objection, so I don't have to make it each time, for the purpose of the record, I am objecting to this entire line of testimony, that it is improper cross-examination, that it is incompetent, irrelevant and immaterial, no bearing on these issues as to whether or not this defendant bought these two coats knowing that they were stolen property. THE COURT: Counsel, on redirect examination you opened up this line of inquiry as to the investigation this officer made. You left the inference that the officer didn't ask this defendant about any of the items in there. That is the inference you

left.'' The recross-examination continued about conversations between the officers and defendant with respect to other articles found in the apartment, defendant testifying he told the officers he had bought them.

■ If a defendant offers himself as a witness, he may be cross-examined by counsel for the People as to all matters about which he was examined in chief. (Pen. Code, § 1323.) The cross-examination may be directed to eliciting any matter which may tend to overcome or qualify the effect of the testimony given by him on direct examination. (*People* v. *Zerillo,* 36 Cal.2d 222, 228 [223 P.2d 223].) He may be cross-examined with respect to facts or denials which are necessarily implied from the testimony in chief as well as with respect to facts which he expressly states. (*People* v. *Teshara,* 141 Cal. 633, 638 [75 P. 338].) ■ If a defendant takes the stand and makes a general denial of the offense with which he is charged, the permissible scope of cross-examination is very wide. (*People* v. *Cahan,* 141 Cal.App.2d 891, 904 [297 P.2d 715].)

■ On redirect defendant was asked if he told or explained to the officer about any of the articles found in his apartment other than the fur coats and the clock—whether he was ''holding them either for money due or rent due, that you had taken articles,'' to which defendant replied, ''No.'' The recross-examination was directed to matters implicit in defendant's testimony on redirect.

It should be noted that the recross, to which defendant objected, was taken into consideration by the trial judge only as affecting defendant's credibility. The judge stated:

''The only purpose that the evidence could be received and the only purpose that it is being received for, is related to the credibility of this witness, period.''[1]

We find no error in the record.

Judgment and order affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

---

[1] The judge also stated: ''The only purpose that I let it in for is the purpose that I previously indicated, to go to the credibility of this witness' story. I am not concerned with the property that was in there other than the property that has been introduced here in evidence.''

''I want the record to show we have had a lot of testimony here regarding other property found in this apartment. I want the record to show, again, that the receipt of any testimony or evidence in connection with other property other than involved in the charge here has been received, and is being considered by the Court for a very limited purpose. I have indicated what the purpose is, before, and I just want to be sure that, with all this testimony about any number of other items, that I am not concerned about how he got them.''