[Crim. No. 5941. Second Dist., Div. One. Dec. 12, 1957.]

THE PEOPLE, Respondent, v. RAYMOND DUPREE,
Appellant.

Raymond Dupree, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

WHITE, P. J.—The Grand Jury of Los Angeles County returned an indictment wherein the above named defendants were jointly charged, in Count I, with a violation of Health and Safety Code, section 11500, a felony, in that on September 25, 1956, in Los Angeles County they sold a preparation of heroin. Count II charged defendants with a further violation of the aforesaid code section in that they sold marijuana. It was also alleged that defendant Dupree had suffered two prior convictions, one for importing and concealing marijuana, a felony, in the District Court of the United States, Western District of Texas, and a conviction in California of violating section 11500 of the Health and Safety Code, a misdemeanor. Defendant Mack was charged with a prior conviction in California of the crime of rape, a felony.

Both defendants pleaded not guilty and admitted the prior convictions charged against them. A jury convicted both defendants on each count. Motions for a new trial were denied. Defendant Dupree was sentenced to State Prison. From the judgment and the order denying his motion for a new trial, defendant Dupree alone prosecutes this appeal.

We regard the following as a fair epitome of the evidentiary features presented in this prosecution. On September 25, 1956, Officer Cherry L. Brown was a police officer of the city of Los Angeles, assigned to the narcotics detail. He was "working under cover." While driving in his own automobile he observed defendant Mack sitting on a chair on the corner of 24th Street and Central Avenue, in Los Angeles. The officer approached Mack and inquired of him, "who had it, or turn me on." Mack replied that he didn't have anything and asked the officer to "turn him on." Ac-

cording to the officer, the expression "Turn me on" means "Help me to get what I'm after." The officer replied that he didn't have anything, but he could use something. Mack then stated that he didn't know of anyone around the corner of 24th Street and Central Avenue who had anything but that he might be able to find something. Officer Brown and defendant Mack entered the officer's car and proceeded to drive south on Central Avenue with Mack looking at pool halls and taverns but he did not see anyone. They drove to 55th Street and Long Beach Avenue and stopped. Mack looked around, they couldn't find anyone, so they drove to 55th Street and Compton Avenue. They still didn't see anyone that Mack knew so they drove back to Central Avenue and proceeded north on that street.

At about 36th Street and Central Avenue Mack saw "A brown Frazer, 1947 or '46" driving south on Central Avenue. They turned around and caught up with the brown Frazer automobile at about 40th Street and Central Avenue and Mack yelled into the brown Frazer, "Raymond, stop, I want to see you." The person addressed as Raymond was the appellant, Raymond Dupree. The latter drove around the corner of 43rd Street and Central Avenue, stopped and Officer Brown drove up behind him. Appellant then entered the officer's vehicle. Mack asked appellant if he had anything, and the latter wanted to know what he wanted. Mack said some cigarettes and appellant asked how many. Mack asked the officer how many and he replied ten. Appellant then furnished the officer ten cigarettes and the officer gave him $4.00 and Mack $1.00. Appellant got out of the car and then informed the officer, "I can get anything you want," and also told the officer, "I have a $3 paper on me." Officer Brown told appellant he would take that also, whereupon appellant furnished him a small bindle of heroin for $3.00. Appellant then left in his automobile and Officer Brown drove Mack back to 24th Street and Central Avenue, where they parted.

Officer Brown sealed the cigarettes and the bindle of heroin in manila envelopes and left them with the property division of the Los Angeles Police Department. Upon examination by a chemist each of the 10 cigarettes was found to be marijuana and the bindle was found to contain heroin.

Defendant Mack testified that Officer Brown did make a purchase of cigarettes and heroin in his presence, in which purchase he (Mack) did not participate, but that appellant was not the man from whom the purchase was made. Mack

testified that he had never seen appellant prior to September 25, 1956, and to his (Mack's) knowledge the first time he saw appellant was in jail. Appellant testified that he never left home on September 25, 1956, that he did own a brown 1947 Frazer but his car was unable to run that day, and that to his knowledge the first time he ever met or came into contact with defendant Mack was the day he was taken into custody, November 12, 1956. Miss Louise Orebo testified that appellant was her common law husband; that she was living with him on September 25, 1956; that she was home all day; and that appellant never left home that day. Mrs. Beatrice Bivens, appellant's sister, testified that she visited at appellant's home around noon on September 25, 1956, stayed for lunch, left, and returned about 5 p. m., staying until midnight. That on each occasion appellant was there.

As his first ground for reversal of the judgment and order appellant contends that the indictment returned by the grand jury was not properly presented in that, "Defendant was Secretly indicted, without Reasonable or Probable Cause; in violation of the *Due Process Clause or the FOURTEENTH AMENDMENT, and Section 1181 of California Penal Code.*"

In this regard appellant challenges the validity of the indictment because he was not present at the grand jury sessions and confronted with the witnesses against him. Such procedure, he argues, violates the Sixth Amendment to the Constitution of the United States, the due process clause of the Fourteenth Amendment to the federal Constitution, and section 1181 of the Penal Code of this state. No transcript of the proceedings before the grand jury has been brought here on this appeal, and therefore, the claim presented by appellant as to those proceedings are outside the record. We could dispose of his contention on the ground that matters not contained in the record may not be considered on appeal (*People* v. *Hartridge,* 134 Cal.App.2d 659, 667 [286 P.2d 72]; *People* v. *Martin,* 128 Cal.App.2d 361, 364 [275 P.2d 635]); we are however, disposed to consider appellant's contention as though it was properly raised. Appellant misconceives the powers and functions of a grand jury. ▪ In *People* v. *Foster,* 198 Cal. 112, 120 [243 P. 667], after pointing out that a grand jury is a distinctive, inquisitorial body, the court stated: "*Its sessions are secretly conducted* and the person whose acts are under investigation by it may have no official knowledge that he is the subject of investigation nor does he know who his accusers were or what they have testi-

fied to until after the indictment has been returned against him. In short, the accused has not had his day in court so far as the preliminary proceedings are concerned. The right of the accused to be informed of the evidence taken before the grand jury, even after indictment found, is a modern statutory innovation of the ancient rule. *In no case is the accused privileged to be confronted by his accusers. Indeed, he may not appear before the grand jury or produce witnesses in his own behalf as a matter of right.*" (Emphasis added.) (See also Pen. Code, § 920; *People* v. *Goldenson,* 76 Cal. 328, 345 [19 P. 161]; *People* v. *Finkel,* 70 Cal.App.2d 508, 516, 517 [161 P.2d 298].)

■■ Appellant also misconceives the meaning of the California Constitution, article I, section 13, and Penal Code, section 1181, subdivision 1. Nowhere, in either the constitutional provision or statute is any right conferred upon a person under investigation, to appear before the inquisitorial body. They speak only of a person's right to his day in court, and to be present at all proceedings conducted at the trial. The Constitution of this state (art. I, § 13) provides that, "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend, in person and with counsel. . . ." Penal Code, section 1181, referred to by appellant, provides that upon an adverse verdict at the trial, the court may upon application of the accused, grant a new trial (subd. 1), "When the trial has been had in his absence." A grand jury proceeding not being a criminal trial (*In re Lemon,* 15 Cal.App.2d 82, 84-87 [59 P.2d 213]; *In re McDonough,* 21 Cal.App.2d 287, 288 [68 P.2d 1020]), it necessarily follows that appellant's reliance upon the aforesaid constitutional provision and statute are unavailing Neither does the Sixth Amendment to the federal Constitution afford appellant any comfort in his claim that he had a right to be heard or appear before the grand jury. In *Duke* v. *United States,* 90 F.2d 840, 841 [112 A.L.R. 317], it was said: ". . . There is no right on the part of one whose conduct is being investigated by a grand jury to petition the grand jury or to appear before it, which is guaranteed by the Constitution or otherwise; . . ." (See also *United States* ex rel. *McCann* v. *Thompson,* 144 F.2d 604, 605-606, *Goodman* v. *United States,* 108 F.2d 516, 519 [127 A.L.R. 265].)

██ Appellant's further claim that the proceedings before the grand jury being secret invalidated the indictment returned against him under the protective provisions of the United States Constitution was decided adversely to him in *Goodman* v. *United States*, 108 F.2d, *supra*, page 519, wherein the court said, ". . . From the earliest times it has been the policy of the law to shield the proceedings of these bodies from public scrutiny, and to this end the grand jurors themselves have always been sworn to keep their own counsel and that of the state or the King." Appellant has simply confused the function and procedure of a grand jury with the rules applicable to a court trial upon grand jury indictment. ██ Appellant's contention that the indictment herein offended the Fourteenth Amendment of the United States Constitution and was in violation of Penal Code, section 1181, in that there was no probable cause for the return thereof is equally without merit. As heretofore pointed out, the Penal Code section has no application to appellant's complaint. While the grand jury transcript is not before us, nevertheless, we perceive no violation of appellant's constitutional rights as to the inadequacy of probable cause for his indictment, since Penal Code, section 995, subdivision 2, affords him an opportunity to challenge the legality of the accusatory pleading on that ground, and to seek a writ of prohibition in this court upon an adverse ruling upon such challenge. Not having availed himself of this right in the trial court, appellant cannot now for the first time on appeal assert it.

Appellant's next contention is that his ". . . arrest was illegal, which result in violation of Section 844 of the Penal Code, by two officers who push their way in his home and made an illegal search and then arrested him without a warrant of arrest or a Search Warrant." Appellant relies upon the case of *Badillo* v. *Superior Court*, 46 Cal.2d 269, wherein, at page 272 [294 P.2d 23], our Supreme Court said: "The defendant makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification (citation)." The difficulty encountered by appellant in his contention is that the record of proceedings in the trial court contains no testimony concerning the circumstances surrounding appellant's arrest and the issue of unlawful search and seizure was not there raised. Therefore, it would be necessary, before the judgment could be reversed,

to presume that the officers acted illegally and that therefore, the trial court erred in admitting the evidence so obtained. ██ Error will not be presumed on appeal, and unless evidence to the contrary is presented, it must also be presumed that the officers regularly and lawfully performed their duties (*People* v. *Guy,* 145 Cal.App.2d 481, 488 [302 P.2d 657]). Furthermore, a complete answer to appellant's contention is furnished by the record which shows that the narcotics were secured by the officer by means of a purchase rather than by search or seizure.

██ Appellant next asserts that the jury gave no consideration to the testimony of his alibi witnesses who testified that he was at home throughout the day on which it is alleged that the offense was committed. The jury heard the testimony of these witnesses and it must be assumed they gave consideration thereto. By their verdict, it is manifest the jury chose not to believe the testimony given by these witnesses. Under the law, the jury was authorized to reject such testimony as might have been contradictory to that of the officers if they conscientiously felt warranted in so doing (*People* v. *Haydon,* 18 Cal.App. 543, 553, 554 [123 P. 1102, 1114]). The case just cited, at page 555, also furnishes a complete answer to appellant's attack upon the credibility of testimony given by Officer Cherry Brown. We find nothing in his testimony that would warrant us in holding that it was untrue or improbable upon its face, and therefore, unbelievable *per se.* Consequently, we cannot impinge upon or invade the province of the duly constituted arbiter of the facts.

Appellant next asserts that a conversation recorded upon a tape recorder was improperly introduced into evidence. The record reflects that during the progress of the police investigation of the crime here involved, Officer Garrahan of the Los Angeles Police Department had a conversation with appellant's codefendant, Mack. This conversation was recorded upon a tape recorder and the recording was played to the jury at the trial. Appellant bases his claim of inadmissibility of the recording on the ground that "Such said recording was made unbeknowning to defendant Mack, and 15 or 20 more people voices were recorded over the same conversation. Further to be notice, is that, the operator of said recording was not presence in Court, to tell how these 15 or 20 people voices become involve on the same tape." The record reflects that on direct examination of Officer Garrahan, he testified:

"THE COURT: Just one question: You have heard the re-

cording, you have already indicated it was played back. Is that an accurate recording of the conversation as far as we can get a mechanical recording of a conversation? A. Yes, sir, it is.

"Q. By Mr. Ritzi (Deputy District Attorney) : One further question, officer: The voices on there are they the voices of yourself, Officer Brown and this defendant? A. Yes, sir, they are.

"Mr. Ritzi: Defendant Mack? A. Yes."

█ Thus, we have identification of the recording as an accurate reproduction of the officer's conversation with defendant Mack and identification of the voices upon the recording as those of the witness, another officer and defendant Mack. A proper foundation was therefore laid, and the recordings were admissible. (*People* v. *Jackson*, 125 Cal.App.2d 776, 779 [271 P.2d 196] ; *People* v. *Fratianno*, 132 Cal.App.2d 610, 634 [282 P.2d 1002].) Appellant complains that there were 15 or 20 other voices upon the recording. The only reference to this we can find in the transcript occurred when defendant Mack was under cross-examination and he was asked, "Well is there any other voices on that record, sir, other than yours, the officer, that is Officer Garrahan, and Officer Brown?" to which the witness replied, "Well, frankly speaking, sir, some places I couldn't tell, sound like 15 or 20 people on there." No objection was made to the recordings on that ground, and since the testimony upon the recordings was not transcribed into the record on appeal, we have no way of knowing whether appellant's contention is true. █ Therefore, involving as it does, matters outside the record it cannot be considered upon this appeal (*People* v. *Hartridge, supra*, p. 667), and conceding the truth of appellant's contention it cannot be regarded as prejudicial. If those parts of the tape recording which pertained to the instant case were intelligible, and there is no suggestion to the contrary, the tape recording would be admissible. █ That a recording may not be clear in its entirety does not of itself require its exclusion from evidence, "since a witness may testify to a part of a conversation if that is all he heard and it appears to be intelligible" (*People* v. *Curtis*, 134 Cal.App.2d 624, 627 [286 P.2d 446] ; *People* v. *Jackson, supra*, p. 779). █ That the recording was made without the knowledge of defendant Mack does not vitiate its evidentiary value when, as here, the accuracy of the records was established.

Appellant's contention that his counsel at the trial did not

adequately represent him is refuted by the record. ■ Before it can be held that an accused's representation by counsel was inadequate to the degree that it violated his right to representation under the Fourteenth Amendment to the Constitution of the United States, an extreme case must be disclosed. The representation must be of such a low order as to render the trial a farce and a mockery of justice (*Diggs* v. *Welch*, 148 F.2d 667, 669), or it must be shown that the essential integrity of the proceeding as a trial was destroyed by the incompetency of counsel (*United States* ex rel. *Weber* v. *Ragen*, 176 F.2d 579, 586). The only stricture applied by appellant to the conduct of his counsel is that the latter "did not make any attempt to set forth the facts, that said Officer Cherry Brown committed perjury testimony." From a reading of the record herein, no difficulty is encountered in recognizing why appellant's counsel did not cross-examine Officer Brown on the theory that he committed perjury. The record does not support any such assumption, nor does it support the assumption implicit in appellant's brief, that the testimony of Officer Brown was so inherently improbable as to challenge credulity or do violence to reason. The cross-examination of the officer by appellant's counsel was painstaking and thorough. ■ While the opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner, the courts are uniform in holding that the claimed absence of effective representation will not be sustained unless the circumstances surrounding the trial indicate a representation so lacking in competence that it becomes the duty of the court to observe and to correct it. Measured by these tests, appellant's claims herein are totally devoid of merit.

Equally unavailing is appellant's assault upon the testimony of Officer Brown as being inherently improbable and unworthy of belief. Appellant levels his attack upon the testimony of Officer Brown that he saw appellant once while the latter was wearing sun glasses and then subsequently identified appellant's picture from police photograph books. The latter insists that it would be impossible for Officer Brown to see him once, while he was wearing sun glasses, and then pick out his picture from a photograph book and swear under oath that appellant was the same man. Appellant further contends that the testimony of Officer Brown was inherently improbable in that the officer testified he held the license number of appellant's automobile in his memory for two days. This testimony is as follows:

"Q. How was your subsequent identification of Mr. Dupree made after the 25th of September, 1956?

"—When he drove off, I memorized his license number and the type of his car. I went back to the narcotic division and gave this information to my supervisors who looked—who called and found the owner of that license plate. The owner was found to be Raymond Dupree. From there we looked up the records and found that a Raymond Dupree had previously been arrested. I looked in our photograph books and found a picture that very closely resembled Raymond Dupree. T*ehy* turned out to be the same person."

As pointed out by respondent, "Appellant links the above quoted testimony of Officer Brown with the testimony of Officer Brown that he marked the narcotics received from appellant with his initials and the date, and the testimony of the police chemist that he received the narcotics on September 27, 1956, to reach a conclusion that Officer Brown must have held the license number in his memory, without writing it down, from September 25 until September 27. It is this conclusion which appellant apparently regards as inherently improbable. However, appellant has misunderstood the testimony of Officer Brown. In the quoted testimony the officer is obviously saying that he went immediately back to the narcotics division and gave the license number to his superior. There is no justification for saying that he waited two days. However, there is certainly nothing inherently improbable in a man holding an automobile license number in his memory for two days, most especially a police officer who is, doubtless, trained in such work." As heretofore pointed out, since there is nothing inherently improbable in the testimony of Officer Brown, the question of his credibility and the value and effect of his evidence was a matter for the jury to determine.

 In asserting that the trial court erred in the matter of instructions, appellant apparently contends that his codefendant Mack was an accomplice, and that the court was required to advise the jury that the testimony of Mack should be viewed with distrust (Code Civ. Proc., § 2061, subd. 4). In the instant case the codefendant Mack did not implicate appellant in the crime charged. On the contrary, he testified that appellant was "definitely not" the third person concerned in the alleged criminal transaction herein. Error may not be predicated upon the failure of a court to give the above referred to cautionary instructions when a codefendant denies

any participation in the crime charged and does not incriminate the other defendant (*People* v. *Thompson*, 133 Cal.App. 2d 4, 10, 11 [284 P.2d 39]). Furthermore, it is manifest that the jury not only viewed the testimony of the codefendant with distrust, but totally disbelieved it, since, notwithstanding the latter's testimony that appellant did not participate in the sale of the narcotics, the jury convicted him. Surely, error cannot be predicated upon the court's failure to instruct the jury to do the very thing they did in fact do (*People* v. *Avery*, 64 Cal.App.2d 850, 858 [149 P.2d 758]).

 Also, in the instant case, while defendant Mack did testify, he testified as a witness in his own behalf. It is well settled that in a case where there are two defendants, each of whom testifies in his own behalf, the cautionary instruction (Code Civ. Proc., § 2061, subd. 4) should not be given. In the situation prevailing in the case at bar, it would have been highly improper and prejudicial to the codefendant Mack had the court in any way indicated he was an accomplice and that his testimony should be viewed with caution or distrust (*People* v. *Burnette*, 39 Cal.App.2d 215, 231 [102 P.2d 799] ; *People* v. *O'Brien*, 96 Cal. 171, 180, 181 [31 P. 45]).

Appellant urges that the testimony of Louise Orebo and Beatrice Bevins that on the date of the offense, the former was at home all day doing housework, "was not given any consideration or determination" by the jury. This testimony was presented to the jury, and the verdict rendered at once suggests that the jury refused to accept it as true. This they had a right to do. The question of credibility of witnesses is for the jury and will not be reviewed on appeal (*People* v. *DePaula*, 43 Cal.2d 643, 649 [276 P.2d 600] ; *People* v. *Simpson*, 43 Cal.2d 553, 562, 563 [275 P.2d 31]).

The judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Fourt, J., and Drapeau, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.